THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.*
ROY SANDERS, DEFENDANT AND APPELLANT.

No. 11163.
Submitted February. 10, 1967. Decided February 23, 1967.
424 P.2d 127.

Maurice Maffei and John Frankovich (argued), Butte, for
appellant.

Forrest H. Anderson, Atty. Gen., William A. McCormick,
Asst. Atty. Gen., Helena, Mark Sullivan, County Atty.
(argued), John Prothero, Deputy County Atty., Butte, for re-
spondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by the defendant from a judgment entered on a jury verdict of guilty of first degree murder. The defendant was sentenced to life imprisonment.

The defendant-appellant is Roy H. Sanders and will be referred to as the defendant.

The defendant makes four specifications of error which in substance contend that the verdict and judgment are contrary to the law and evidence because the jury did not find the defendant insane at the time he committed the crime with which he was charged and convicted. Although the defendant makes the contention that the judgment and verdict are contrary to the law, the defendant's brief does not refer this court to a single error of law made by the district court. Thus, the single issue presented by this appeal is whether there is sufficient evidence to support the jury's verdict.

The information charging the defendant with first degree murder reads in part: "That at the County of Silver Bow, State of Montana, on or about the 5th day of August, A.D. 1965, * * * the said defendant did willfully, unlawfully, and wrongfully, knowingly, intentionally, feloniously, deliberately and premeditatively, with and of his malice aforethought, kill and murder one Robert Henningsen, a human being, contrary to the form, force, and effect of the statute is such case made and provided, and against the peace and dignity of the State of Montana."

The defendant testified in his own behalf at the trial. From defendant's own testimony the events that took place on the day of the shooting can be summarized.

The shooting took place on August 5, 1965. Defendant was in his early seventies and resided at the Silver Bow Homes in Butte, Montana.

Defendant received his monthly social security check on the 3rd or 4th of August, 1965. When defendant left his home on

August 5, 1965, to pay his rent and make some purchases in uptown Butte, he took with him a small 38-caliber revolver. Defendant paid his rent as planned and proceeded to uptown Butte. His first stop uptown was at Penney's department store to buy a pair of slippers. Then he went to the State liquor store and bought a bottle of brandy. Both of these stores are located on Park Street which runs generally in an east-west direction. His next intended stop was the Royal Bakery on North Main Street, which runs generally in a north-south direction. Defendant retraced his path over Park Street. He did not go all the way to Main Street but used an alley that runs north-south between Park Street and Broadway Street. This alley exits on Broadway Street at a point in between the Prudential Federal Savings and Loan Building and the Christie Furniture Store.

As the defendant came out of the alley onto Broadway Street, he saw Mr. Robert Henningsen in the display window of the Christie Furniture Store. Defendant stated that Mr. Henningsen was moving furniture around in the window fixing the display like a bedroom. Defendant stated that he saw two or three other persons also working in the store.

Sometime after defendant had made the purchase at Penney's department store, he had placed his small revolver in the package containing the slippers. Defendant entered the Christie Furniture Store and walked to the display window where Mr. Henningsen was working. There was an exchange of greeting. Then, defendant took out the small revolver and said to Mr. Henningsen, "I got something for you, Bob, you thieving son of a bitch." Defendant shot Mr. Henningsen one time.

Working in or near the display window with Mr. Henningsen were three other Christie Furniture Store employees. They were Catherine McIntosh, Glen Lewis, and Wendell Pollard. Their testimony concerning the shooting substantially agreed with the account told by the defendant.

After the shooting Wendell Pollard wrestled with the de-

fendant and knocked him to the ground. Glen Lewis took the gun from the defendant while the defendant and Mr. Pollard were scuffling.

Defendant did not attempt to use the gun on the other employees in the display window. After the gun had been taken from him, defendant sat in a chair in the store waiting to be taken to the police station. At this time he stated to Mr. Pollard, "I should have shot you, too."

With the exception of this one threatening comment, Mr. Pollard and Mr. Lewis testified that defendant sat quietly in the chair waiting for the police.

Thus, the events surrounding the actual shooting are not in dispute.

Section 94-201, R.C.M.1947, provides in part: "All persons are capable of committing crimes except those belonging to the following classes:

\* \* \* \* \* \* \* \* \* \*

"3. Lunatics and insane persons. \* \* \*"

Section 94-119, subd. (2), R.C.M.1947, provides in part: "When the commission of the act charged as a crime is proven, and the defense sought to be established is the insanity of the defendant, the same must be proven by the defendant by a preponderance of the testimony \* \* \*."

At the trial the defendant attempted to make use of the defense of insanity. To support his contention of insanity the defendant testified, several exhibits were introduced, and the expert testimony of a psychiatrist was offered for the jury's consideration.

While testifying, defendant was given a complete opportunity to tell his story to the jury. He was allowed to explain his version of the business dealings he had had with Christie Furniture Store and Mr. Henningsen. Defendant was allowed to trace many incidents in his life in which he alleged he had been unjustly treated or unfairly treated by courts of law, doctors, attorneys and others. He stated his reasons for shooting Mr.

Henningsen. There was no attempt by the county attorney to limit the defendant's testimony to the facts surrounding the shooting incident. Every fact which the defendant wished to put before the jury was allowed.

Two of the exhibits introduced by the defendant dealt with his business dealings with Christie Furniture Store. The other two exhibits were letters—one written by defendant to an attorney concerning another legal action in which defendant had been involved and the attorney's reply. The purpose of introducing these exhibits was undoubtedly to demonstrate that defendant was confused as to the actual dealings that had taken place between him and Christie Furniture Store and to further show by his letter his confused state of mind that he would never receive "justice" in or from a court of law.

Dr. Henry W. Hogan, a Missoula psychiatrist, testified concerning defendant's sanity. Dr. Hogan had examined defendant on February 11, 1966, at the Silver Bow County jail. This examination lasted about one and a quarter hours and took place about one week before the trial. Dr. Hogan's opinion was based on this examination and his observation of the defendant in the courtroom during the course of the trial, and other history of the defendant that was gathered from defendant's son, and a review of the psychiatric report of the Montana State Hospital at Warm Springs.

Dr. Hogan testified that it was his opinion that at the time of the trial the defendant was not "able to distinguish between right and wrong as the rest of society views it." Dr. Hogan testified that it was his opinion that the defendant "was unable to choose right from wrong at that time (the day of the shooting) as you and I know it." Dr. Hogan further testified that the defendant was a "very dangerous man."

To rebut this contention of the defendant concerning insanity, the state offered the testimony of Dr. M. F. Gracia, a psychiatrist at the Montana State Hospital at Warm Springs. Less than two weeks after the shooting defendant had been sent

to Warm Springs for a psychiatric examination and evaluation. This examination and confinement lasted for about two months. Dr. Gracia repeatedly examined the defendant during his confinement. On the basis of this period of confinement and examination, Dr. Gracia testified that he felt that the defendant "knew right from wrong at the time" when he was being examined in Warm Springs. Dr. Gracia was reluctant to give any opinion as to the mental condition of the defendant at the time of the shooting. In this regard he stated, "(W)hat happened before it (the period the defendant was confined in Warm Springs for examination) is pretty difficult to say." In summary Dr. Gracia testified that defendant had a "paranoiac personality"; that having a touch of paranoia does not make a man a psychotic or an insane person; that on the basis of the testimony that he had heard the defendant give in court he felt that defendant knew right from wrong then; and finally, that the defendant "would be a dangerous person" to be at large.

It was a legal defense for the defendant to allege insanity as a bar to his being convicted of the crime charged, but by using this defense defendant was charged with the burden of proving to the jury "by a preponderance of the testimony" that he was in fact insane as required under § 94-201.

As previously noted, defendant makes no contention that the district court's instructions to the jury concerning insanity are in error. In his brief, defendant quotes from several Montana cases which have discussed the type of instructions that are proper in insanity defense cases. Defendant makes no contention that these cases should be set aside. Rather defendant contends that he has carried the burden of proving to the jury that he was insane at the time of the crime and that the verdict is contrary to the law and evidence. We cannot agree with this contention.

■ The fact that defendant shot and killed Mr. Henningsen was clearly established at the trial, and defendant does not deny it. Defendant's own testimony demonstrates that his

activities on the day of the shooting were quite normal and followed his usual routine. The testimony of the various witnesses to the shooting demonstrated that defendant was quite calm after the shooting had occurred. The testimony of the two psychiatrists who testified at the trial differs in some respects, but it was for the jury to resolve whatever conflicts that might have existed in the testimony. The jury did not resolve these conflicts in the defendant's favor.

In State v. Noble, 142 Mont. 284, 304, 384 P.2d 504, 514, we commented on this court's function in reviewing the jury's verdict in a criminal matter: "* * * the weight of the evidence in a criminal matter is for the jury to determine in the first instance. If the circumstances reasonably justify the verdict, this court must assume existence of every fact which the jury could have reasonably deduced from all the evidence to reach its verdict."

There was considerable evidence in this case which indicated that the defendant was sane at the time he shot Mr. Henningsen. It was for the jury to weigh the evidence presented which might have indicated that the defendant was insane. In our view the evidence in this case is sufficient to sustain the jury's verdict.

The judgment appealed from is affirmed.

MR. JUSTICES ADAIR, DOYLE, JOHN C. HARRISON and CASTLES, concur.