THE STATE OF MONTANA, Plaintiff and Respondent, *v.*
ELMER STEWARD, Defendant and Appellant.

No. 11464.
Submitted Sept. 9, 1968. Decided Oct. 3, 1968.
445 P.2d 741.

552

Howard C. Forman (argued), Billings, for defendant and appellant.

Forrest H. Anderson, Atty. Gen., Charles M. Joslyn, Asst. Atty. Gen. (argued), Helena, John L. Adams, Jr., County Atty. (argued), Billings, for plaintiff and respondent.

MR. JUSTICE JOHN CONWAY HARRISON delivered the Opinion of the Court.

This is an appeal from a conviction of two counts of second degree assault. The appellant was charged with two counts of first degree assault and the jury found him guilty of two counts of second degree assault.

From his own version the appellant, Elmer Steward, was a resident of and worked in Cody, Wyoming. On July 19, 1967, he went to his son's house to borrow a .22 caliber pistol so he could go target practicing with a friend, whose name the appellant fails to remember. This friend never showed up so he proceeded back to his son's house with the intention of returning the gun. The son was not home so the appellant went to the local Ford garage to try out a car. He took the revolver from the truck and put it in the borrowed car. He then went to his home, changed his clothes and packed this car with some meat, a roaster, and fishing tackle; he then

proceeded to Billings, Montana, to see his ex-wife, Ruth Steward. The pistol at this time was on the seat of the car.

When appellant arrived at his ex-wife's residence she was about to drive away. He hailed her down and they then carried the roaster, meat and fishing tackle into her apartment. Upon leaving the car he put the gun in his pants pocket.

While Mrs. Steward was putting the meat in the freezer the appellant attempted to put his arm around her. Mrs. Steward testified that she spun around in a half circle and went to the kitchen table to put a cigarette out when the appellant shot her in the back of the head and then beat her over the head with the revolver. The appellant's daughter, Mrs. Cheryl Blackburn, who was staying with her mother, was lying on the sofa in the living room when this incident occurred. Mrs. Blackburn testified that she ran into the kitchen to try and stop appellant but he hit her on the head with the pistol, pushed her away, and shot her in the head. Either before or after the daughter was shot, the appellant again shot Mrs. Steward. Mrs. Steward suffered from two puncture type wounds, one in the right ear and one at the right neck and shoulder; two lacerations of the scalp and contusion of the left hand. Mrs. Blackburn also had a puncture type wound of the scalp which extended from the forward portion of the head to the rear part of the scalp.

Mrs. Steward and Mrs. Blackburn both testified that when the appellant entered the apartment he seemed upset but there was nothing unusual about his appearance or conduct. After the shooting, however, he went into a state of hysteria— screaming and yelling incoherently and not seeming to recognize anyone for a short period of time.

The Honorable E. E. Fenton granted an order transferring the appellant to the Montana State Hospital at Warm Springs for a mental examination and evaluation. The hospital issued a written report on the appellant's mental condition. At the trial, Dr. Dean Warwick, a psychiatrist at the State Hospital,

testified that he performed many tests on appellant and he was unable to give an opinion as to whether the appellant could distinguish between right or wrong at the time of the shooting. At the request of appellant's court appointed attorney the appellant was given another mental examination by Dr. Jess Schwidde, a specialist in neurology who has also had some psychiatric training. Dr. Schwidde testified that the appellant was suffering from a mental disease originating from a calcification in the brain's frontal lobe. Dr. Schwidde stated that Steward was afflicted with mental pressure resulting from a variety of occurrences—his daughter constantly getting into trouble since she was fifteen, caring for his neglected grandchildren, being twice married to and divorced from Mrs. Steward, and coping with his wife's bouts with alcohol. The doctor believed that the culmination of all these factors produced a temporary disturbance which made it improbable that the appellant was conscious of what he was doing; hence, not capable of distinguishing right from wrong at the time of the incident.

Appellant bases his appeal on two grounds: (1) a change in venue was not granted, and (2) he was not legally or mentally responsible for his acts at the time of the shooting.

Issue No. 1 concerns the question of a change of venue. A few days prior to trial, various articles appeared in the Billings Gazette, a newspaper with a circulation of about 50,000. The articles, scattered in the back pages of the paper, bore such titles as "Steward Denies Shooting Women," "Steward Asks Change of Venue," and "Steward to Get New Examination." Appellant contends that these publications prejudiced him to such a degree that a fair and impartial jury panel could not be drawn. Appellant filed a motion for change of venue which was heard prior to trial. Judge Fenton ruled "* * * in the event a jury cannot be obtained from the panel summoned to appear on Monday, November 13th, 1967, by reason of opinions or prejudice created by newspaper reports, that

the motion then will be deemed granted, but that if, after fair and complete examination and questioning of prospective jurors, a jury is obtained on the 13th, then the motion for change of venue will be deemed denied."

The usual voir dire of a jury panel was conducted and twelve competent people were impaneled. Of these twelve, nine did not read or did not recall reading any of the articles in the paper, and the other three testified that they just skimmed the bold print or glanced at the article but did not form any opinion. These jurors apparently were acceptable to the county attorney, John Adams, and defense counsel, Howard Foreman. It should be noted that defense counsel did not use all of the peremptory challenges allowed him.

 The well established rule in Montana concerning change of venue based on alleged prejudice as a result of newspaper publications has been set down in State v. Corliss, 150 Mont. 40, 430 P.2d 632; and State ex rel. Hanrahan v. District Ct., 145 Mont. 501, 401 P.2d 770. In those cases the Court stated:

"It is well-settled in Montana that mere publication of a news story concerning a crime is not a deprivation of a constitutional right or a ground for a change of venue. * * *

"This court has said in a number of cases concerning news articles and broadcasts that the publication in itself is not sufficient but that the affidavits must show passion and prejudice flowing from such publication; * * *

"The cases in Montana have established that before a district judge can exercise his discretion in granting a change of venue there must be more than (1) affiant's unsupported opinion, (2) the fact that the account of a crime has been published, that said published accounts of the crime are not prejudicial unless they are passionate enough to excite undue prejudice, to the extent of rendering it impossible for the accused to have a jury free from prejudice."

 Accordingly, the motion for change of venue was

denied because the appellant did not show any prejudice caused by the pre-trial publicity other than his statement that there was some. We feel the ease in which a jury was selected and the fact that all the appellant's challenges were not exercised, especially as to those jurors who stated they had skimmed the newspaper articles, demonstrates there was no prejudice against the appellant.

We now concern ourselves with the principal issue raised—whether under the evidence produced by the appellant there was a preponderance of evidence that he was not responsible for his acts of assaulting his wife and daughter and was therefore entitled to a directed verdict of acquittal.

As previously noted two medical experts testified concerning whether or not the appellant, at the time of the assaults, could distinguish right from wrong, this being the test for criminal responsibility in this jurisdiction. State v. Sanders, 149 Mont. 166, 171, 424 P.2d 127; State v. Noble, 142 Mont. 284, 304, 384 P.2d 504, 514. For the present test see section 95-501, R.C.M. 1947. With this evidence before the jury the appellant contends that with no rebutting medical evidence to consider the court should have directed a verdict in his favor.

This problem is not new to this Court for we have within the last year and a half considered it in the case of State v. Sanders, 149 Mont. 166, 171, 172, 424 P.2d 127, 130, wherein Chief Justice James T. Harrison, speaking for the entire Court, said:

"The testimony of the two psychiatrists who testified at the trial differs in some respects, but it was for the jury to resolve whatever conflicts that might have existed in the testimony. The jury did not resolve these conflicts in the defendant's favor.

"In State v. Noble, 142 Mont. 284, 304, 384 P.2d 504, 514, we commented on this court's function in reviewing the jury's verdict in a criminal matter: '* * * the weight of the evidence in a criminal matter is for the jury to determine in the first instance. If the circumstances reasonably justify the

verdict, this court must assume existence of every fact which the jury could have reasonably deducted from all the evidence to reach its verdict.'

"There was considerable evidence in this case which indicated that the defendant was sane at the time he shot Mr. Henningsen. It was for the jury to weigh the evidence presented which might have indicated that the defendant was insane. In our view the evidence in this case is sufficient to sustain the jury's verdict."

Neither is this a new or unusual situation faced by other courts. In King v. United States, 125 U.S.App.D.C. 318, 372 F.2d 383, a case argued before the United States Court of Appeals, District of Columbia, and decided the same month as State v. Sanders, supra, that court said:

"Although the testimony in support of the insanity defense was impressive, we conclude that it was not sufficient 'to compel a reasonable juror to entertain a reasonable doubt concerning the accused's responsibility,' and hence not sufficient to require the judge to direct a verdict of not guilty by reason of insanity. McDonald v. United States, 114 U.S.App.D.C. 120, 123, 312 F.2d 847, 850 (1962). * * * Since *McDonald,* where we examined at some length the problem of expert testimony and jury consideration of the insanity question, this court has been chary of directed verdicts of not guilty by reason of insanity, even where expert testimony is uncontradicted. The case at bar seems a particular apt occasion to recall, by quotation rather than attempt at paraphrase, this court's reasoning in *McDonald,* supra, at 124, 312 F.2d 851: 'What psychiatrists may consider a "mental disease or defect" for clinical purposes, where their concern is treatment, may or may not be the same as mental disease or defect for the jury's purpose in determining criminal responsibility.' "

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, ADAIR and CASTLES, concur.