STATE OF MONTANA, Plaintiff and Respondent, v. STAN-
LEY CHARLES OLSEN, Defendant and Appellant.

No. 11474.
Submitted September 23, 1968. Decided October 9, 1968.
Rehearing denied November 1, 1968.
445 P.2d 926.

(1)

Berger, Anderson & Sinclair, Billings, James J. Sinclair, (argued), Billings, for appellant.

Forrest H. Anderson, Helena, James R. Beck, (argued), Helena, V. G. Koch, (argued), Sidney, for respondent.

The HONORABLE THOMAS DIGNAN, District Judge, sitting in place of Mr. Justice Haswell, delivered the Opinion of the Court.

This is an appeal from a judgment of conviction of burglary in the first degree. Appellant was charged with burglary with a prior conviction. Appellant pled true to the charge of prior conviction and after a trial the jury found him guilty of burglary in the first degree.

Appellant and his wife checked into the Lalonde Hotel in Sidney, Montana, between two and three o'clock p. m. on March 18, 1966, registered as Mr. and Mrs. R. L. Ward and were assigned room number 223. Appellant was readily distinguishable in that he wore a red jacket with black plaid, a little black hat, black trousers and a black beard that was well trimmed. Appellant's wife, a slender brunette five feet eight inches in height, at times wore a blond wig. Appellant and his wife were seen leaving the hotel between 9:30 and 10:00 p. m. on March 18th, and were observed returning to the hotel the next morning at approximately 5:45 a. m. About fifteen minutes later appellant and his wife checked out of the hotel and departed from Sidney.

Mr. Nesbit, the owner of the jewelry store that was burglarized, checked the store about 8:00 p.m. on March 18, 1966, and found the premises in order. He returned the next morning at 7:35 a. m. to discover that the store had been entered, watches, jewelry and other items removed from the show case, the safe peeled and contents taken.

Sheriff Grinolds was summoned to investigate the burglary, noted that the entrance into the building had been made through a door that had been boarded up with sheet rock. During the course of his investigation he picked up samples of the sheet rock and insulation from the safe. These

4

samples were later sent to the Federal Bureau of Investigation for analysis.

After concluding his on the scene investigation, the sheriff started checking hotels and motels to ascertain if there had been any strangers in Sidney. The clerk at the Lalonde Hotel gave the officers a description of the appellant and his wife. The sheriff and the other officers then went to room 223, which had been unoccupied since appellant's departure, and there found particles of material which looked like the insulation in the jewelry store safe.

On March 21, 1966, at 1:30 in the morning, in response to a call from the Baker law enforcement officers, Sheriff Grinolds and Sgt. Schmidt of the Sidney police force, drove to Baker. Upon arriving they ascertained that a couple answering the description of the appellant and his wife were occupying room number 2 in the Baker Hotel.

The sheriff awakened the appellant and advised him that he was taking him into custody. At the time the appellant opened the door he was wearing a beard. He remained in the room for ten minutes and the sheriff could hear running water, and when he opened the door and was taken into custody, the appellant was smoothly shaven on both sides and had just a goatee and a mustache left. Appellant and his wife were taken into custody. However, at the time the appellant's wife was taken into custody, she packed their bags and they were placed in appellant's automobile.

The sheriff asked appellant for permission to search the room and the car but was refused permission. A search warrant was obtained and the car was taken to a local garage and searched. The search revealed a diamond ring in appellant's suitcase, bracelets, a watch and a set of earrings in Mrs. Olsen's bag. The diamond ring was not listed in the property lost by Nesbit, so the sheriff took the diamond ring to a local jeweler who found the serial number on the ring; the sheriff phoned Mr. Nesbit and ascertained that

this diamond ring had been a part of the jewelry taken in the burglary. The sheriff retained custody of this diamond ring until the trial.

The sheriff, in the search of appellant's car in Baker, found in the trunk of appellant's car, two chisels, a pry bar, a bolt cutter, two walkie-talkies, a saw, one four-pound sledge hammer and one eight-pound sledge hammer, a vise, a locksmith kit, flashlights, screwdrivers, rope, pinchers and other tools commonly used by burglars. These tools, appellant's bag and Mrs. Olsen's bag, were placed in the trunk of appellant's car and locked.

A caravan of the sheriff and appellant's wife left Baker behind appellant in his car driven by Sgt. Schmidt. The caravan stopped in Glendive at the sheriff's office where all of the occupants of the two cars went into the sheriff's office and appellant's car was unattended for a period of thirty minutes. The caravan then proceeded to Sidney and arrived at about 8:00 o'clock that night.

The appellant and his wife were placed in jail and appellant's car with the tools and bags were placed in the undersheriff's garage and the car locked by the sheriff.

The next morning, with the car in the same condition, the sheriff, in front of witnesses, marked all of the burglar tools. Mr. Nesbit identified as his property lost in the burglary, two bracelets, the earrings and a watch.

At a later date the burglar tools and the insulation found in room 223 were shipped, after being marked, to the Federal Bureau of Investigation for examination and returned to the custody of the sheriff.

An agent of the Federal Bureau of Investigation testified that the materials found in room 223, the insulation, was the same material as the insulation in the Nesbit safe that was peeled. That the bit of the appellant had fine deposits of lime gypsum plaster that matched the wall board that was drilled and broken into at the Nesbit Jewelry store.

6

 In the appeal, appellant for the first time alleges error in that the state did not furnish counsel at the preliminary hearing. Appellant was charged and bail set on March 22, 1966, before the justice of the peace. A preliminary hearing was held before the justice of the peace on March 28, 1966, on the charge of burglary in the first degree. Appellant, on cross examination here, testified as follows:

"Q. Mr. Olsen, you have previously stated that you did not have a preliminary hearing. A. I didn't have one while I was in custody no. Afterwards I did, after I had raised bond.

"Q. Were you advised at the hearing that you could have the matter continued until counsel was present? A. Someone may have said that, but I don't recall that. I didn't have an attorney at the time, and I didn't see any point to a continuation, as I would not have been able to get an attorney then, or later on for that matter. I didn't have the money.

"Q. Now at this preliminary hearing, were you asked any questions? A. No, not that I can recall. I didn't testify.

"Q. You didn't testify at all, did you? A. No.

"Q. The purpose of the preliminary hearing was to have other witnesses testify on behalf of the State, was it not? A. Yes."

Appellant and his wife were bound over to the district court on charges of burglary in the first degree on the 28th day of March 1966:

Thereafter the county attorney, upon written affidavit, moved the court to file an information direct. The district court, on the 6th day of April 1966, granted leave to file an information. At that time appellant was represented in court by James A. Sinclair, Esq., of Billings, Montana, who resisted the motion of the county attorney and moved to quash the information. The motion to quash was overruled and the motion of the county attorney to file the information was granted by the court. Subsequent to that time, additional

motions were made by the appellant and his attorney who represented the appellant throughout the hearings, the trial on the merits and the appeal to this Supreme Court.

Appellant cites for his authority Mempa v. Rhay, 389 U. S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) which sets out in detail most of the cases decided in the United States Supreme Court wherein indigent defendants are entitled to an attorney and have an absolute right to the appointment of counsel in felony cases and giving the history of all the previous cases, including Gideon v. Wainright, 372 U. S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.

In spite of the above, section 94-6602, R.C.M.1947, which has been replaced (See sections 95-1702 and 95-1704, R.C.M. 1947), states:

"The motion to set aside the indictment or information must be in writing, * * * and must specify clearly the ground of objection to the indictment or information, and such motion must be made before the defendant demurs or pleads, or the grounds of the objection are waived."

Under the above section, the appellant cannot claim error in view of the fact that a motion to quash the information was not made by the appellant.

Assuming arguendo that the appellant has not waived his right to object and there was failure to appoint counsel at the preliminary hearing, such failure is not reversible error since in Montana a preliminary examination is not a "critical stage in a criminal proceeding."

The purpose of a preliminary hearing in Montana is to determine whether there is probable cause to believe the defendant guilty of the charge. In re Jones, 46 Mont. 122, 126 P. 929. Since this is the purpose, the appellant cannot preserve or lose any rights at this stage of the criminal proceeding.

Similarly, the case of Ronzzo v. Sigler, 8 Cir., 346 F.2d 565, considering the Nebraska statute similar to ours, the circuit court said:

8

" '* * * a procedural safeguard whereby it is assured to all accused of crime that they will not be detained in custody without probable cause existing that the crime charged was committed by them.' In addition to not being required to plead at the preliminary hearing, petitioner was asked no questions and made no admissions. He lost nothing and was prejudiced in no way."

The petitioner in Vess v. Peyton, 4 Cir., 352 F.2d 325, 326, alleged that his conviction was a nullity because he did not have counsel at a critical state of the proceedings, i. e. the preliminary hearing. This contention was answered by the circuit court of appeals:

"As noted by the District Judge, the preliminary hearing in Virginia is not a critical stage of the proceedings, and Vess was not prejudiced by the absence of counsel at this point since no substantive rights were forfeited. Ward v. Peyton, 349 F.2d 359 (4 Cir. 1965); DeToro v. Pepersack, 332 F.2d 341 (4 Cir. 1964); see Snyder v. Commonwealth, 202 Va. 1009, 121 S.E.2d 452 (1961)."

A similar contention advanced in the case of State v. Moses, 101 Ariz. 426, 420 P.2d 560, 561, was rejected by the Arizona Supreme Court:

"Counsel for defendant claims that the failure to appoint counsel at the preliminary hearing is ipso facto prejudicial. With this we cannot agree."

The above case also states the weight of authority in many states is that the accused is not denied due process by a failure to appoint counsel at a preliminary hearing if the preliminary hearing is not a critical stage. With this we agree.

The appellant herein did not plead at the preliminary hearing nor did he make any statements that were introduced in evidence at the trial. He therefore contends that prejudice must be presumed; however, this Court on many occasions

has rejected such a rule. State v. Straight, 136 Mont. 255, 347 P.2d 482; State v. Bubnash, 142 Mont. 377, 382 P.2d 830.

The second specification of error assigned by the appellant is that the lower court erred in refusing to quash the search warrant dated March 21, 1966, and in refusing to suppress the evidence obtained pursuant to the warrant.

Chapter 301 of Title 94, Revised Codes of Montana, 1947, governs the issuance of search warrants. Section 94-301-3 of that chapter provides that a search warrant, among other things, must describe with particularity the place to be searched and the property to be seized.

The search warrant issued herein commands the officers executing it to make a search of the following described property:

"Hotel room No. 2 in the Baker Hotel in Baker, Montana or automobile 1959 Fordor Oldsmobile sedan two-toned maroon and white, bearing 1966 Utah license plate BK 6243."

The warrant commands the officers in executing it to search for the burglary tools and for the property stolen from the Nesbit jewelry store, listing the same.

The United States Supreme Court has stated with reference to the sufficiency of the description contained in the search warrant:

"It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." Steele v. United States No. 1, 267 U. S. 498, 503, 45 S.Ct. 414, 69 L.Ed.757.

In applying this test it is obvious that hotel room No. 2 in the Baker Hotel and the automobile are properly described and the search discovered the burglary tools and the fruits of the crime.

This Court holds that the search conducted in this case was made pursuant to a valid search warrant describing the premises to be searched and the articles to be seized. The lower court did not err in refusing to quash the search

10

warrant and in refusing to suppress the evidence obtained as a result of the search.

■ Appellant's third specification is that the lower court erred in admitting into evidence as exhibits the property taken from appellant, his wife or the car, arguing that the prosecution failed to show a sufficient continuity of possession of the items. Appellant seems to argue that it was incumbent upon the prosecution to prove that there was absolutely no possibility that the exhibits had been tampered with during the time the car was left unattended. Such contention was made in the case of United States v. S. B. Penick & Co., 2 Cir., 136 F.2d 413, 415, and it was held:

"It is true that before a physical object connected with the commission of a crime can properly be admitted in evidence, there must be a showing that such object is in substantially the same condition as when the crime was committed. 2 Wharton, Criminal Evid., 11th Ed., § 757. But there is no hard and fast rule that the prosecution must exclude all possibility that the article may have been tampered with. See Lestico v. Kuehner, 204 Minn. 125, 283 N.W. 122, 125. In each case the trial judge before he admits it in evidence must be satisfied that in reasonable probability the article has not been changed in important respects. Wigmore, Evidence, 3d Ed., § 437(1); 32 C.J.S. Evidence § 607. In reaching his conclusion he must be guided by the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it."

Appellant has not alleged that any of the exhibits had been tampered with and were not in the same condition that they were found in the car at Baker. A determination of whether a foundation has been properly laid in order to introduce exhibits into evidence rests with the lower court and such a determination will not be overturned unless there is a clear abuse of discretion, a situation not present here.

■ Appellant next contends that the evidence does not sustain the verdict of first degree burglary. The evidence here is substantial and this Court has stated on many occasions that the finding of a jury based upon substantial evidence will not be overturned on appeal. State v. Lukus, 149 Mont. 45, 423 P.2d 49; State v. Sanders, 149 Mont. 166, 424 P.2d 127; State v. Pankow, 134 Mont. 519, 333 P.2d 1017.

■ The final specification of error urged by the appellant is that the lower court erred in allowing the endorsement of the witness, Leif Benson, on the information.

The county attorney asked leave of the court to endorse the name of Leif Benson for the reason that he was surprised at the testimony of Sheriff Grinolds to the effect that Benson knew the combination to the evidence vault and had access to the exhibits.

The direct examination of the witness Benson related solely to laying a foundation for the exhibits which were introduced.

Section 94-6208, R.C.M.1947, states that the county attorney at the time of filing must endorse the names of the witnesses for the state upon the information, if they are known. There is no evidence in the record which indicates that the county attorney knew that he would need to call the witness Benson. In fact, the record indicates the contrary. This Court has held for many years that upon such showing the county attorney may endorse the names of additional witnesses. State v. Phillips, 127 Mont. 381, 264 P.2d 1009, and other cases cited therein.

■ The appellant contends that the lower court should have granted a delay to enable appellant's attorney to interview the witness Benson and prepare to meet his testimony. This Court has repeatedly held that the refusal to grant a continuance is not error unless it can be shown that there was a clear abuse of discretion by the lower court. State v. Collins, 88 Mont. 514, 294 P. 957, 73 A.L.R. 861. The appellant herein has not shown such an abuse of discretion.

12

The judgment of the lower court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, JOHN CONWAY HARRISON and CASTLES, concur.