No. 12179

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

NICHOLAS DiGIALLONARDO,

Defendant and Appellant.

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JOSEPH E. DeGESUALDO,

Defendant and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District, Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellants:

Sandall, Moses and Cavan, Billings, Montana.
Charles F. Moses argued, Billings, Montana.
Kenneth D. Tolliver argued, Billings, Montana.

For Respondents:

Hon. Robert L. Woodahl, Attorney General, Helena, Montana.
Jonathan Smith, Assistant Attorney General, argued, Helena, Montana.
Harold F. Hanser, County Attorney, Billings, Montana.
G. Todd Baugh and Diane G. Barz argued, Deputy County Attorneys, Billings, Montana.

---

Submitted: September 26, 1972

Decided: NOV 13 1972

Filed: NOV 1 1972

*Thomas Jr. Kearney*
Clerk

Mr. Chief Justice Harrison delivered the Opinion of the Court.

This is an appeal from a conviction in the district court of the thirteenth judicial district, Yellowstone County of the crime of first degree burglary. Codefendants Nicholas Digiallonardo and Joseph E. DeGesualdo were tried by a jury, in a trial commencing on May 25, 1971. Defendants will hereinafter be referred to as appellants.

Three issues are presented to this Court on appeal. One, whether it was an abuse of discretion by the trial court to deny appellants' motion for a continuance. Two, whether the trial court erred in admitting certain exhibits, which are alleged to be the products of an unlawful arrest. Three, whether there was sufficient corroborative testimony presented by the state to allow the use of the testimony of an accomplice.

On January 19, 1971, appellants and William Osborn, a former employee of the Sears store in Billings, Montana, traveled to Billings from Denver, Colorado. Osborn testified the purpose of this trip was to burglarize the Sears store in Billings. Upon arriving in Billings, appellants, Osborn and two other individuals met in the home of Osborn's parents. The purpose of this meeting, again according to Osborn, was to plan the crime. On the following day, the day of the crime, all five of the participants "cased the store".

At approximately 10:30 p.m., January 20, 1971, an alarm sounded in the office of the Billings police department indicating someone had set off the burglar alarm in the Sears store. Officers were immediately dispatched to the scene. Officer Wickhorst was the first to reach the area. As he approached the building, he saw two men standing near the north edge of the building. As it turned out, the two men were appellants. As Wickhorst approached the men in his police car with the lights turned off, the men began to run. Officer Wickhorst pursued them across the parking

lot of the shopping center, where the Sears store is located, and finally stopped them in the area of the Sears warehouse. He immediately placed them under arrest. Other members of the Billings police force arrived and an investigation was begun. At this time Osborn was found inside the Sears store and placed under arrest. Investigation revealed there had been an attempt to break into the office safe and when the wooden cabinet surrounding the safe had been tampered with, the burglar alarm had been tripped.

On the day trial was to begin, counsel for appellants moved the court for a continuance. His reason for this motion was that on the night before he and Digiallonardo had finally been able to come up with the name of another person involved in the crime. The continuance was to allow appellants time to find this person, and another person who may have been involved in the crime. These two missing participants, or witnesses, were later identified as Jerry Meader and Tom Case. The trial court held a hearing and a record of the proceeding was made. The motion was denied and trial began the next day.

The first issue goes to the matter of the denial of the continuance. As stated above, the substance of the motion for a continuance was that these two individuals had some connection with the crime charged to the appellants and their presence was necessary. Such a motion in a criminal trial is governed by the statutory requirements and conditions contained in section 95-1708, R.C.M. 1947, which provides:

> "Motion for continuance. (a) The defendant or the state may move for a continuance. If the motion is made more than thirty (30) days after arraignment or at any time after trial has begun the court may require that it be supported by affidavit.
>
> "(b) The court may upon the motion of either party or upon the court's own motion order a continuance if the interests of justice so require.
>
> "(c) All motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant.

> "(d) This section shall be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the state to a speedy trial."

Since subsection (c) requires that such motions be directed to the discretion of the trial court, we consider on appeal whether its action was an abuse of discretion. State v. Olsen, 152 Mont. 1, 11, 445 P.2d 926. The statute also allows the trial court to require the filing of an affidavit in support of the motion. No such affidavit was required in this case nor was one filed.

Upon a close examination of the record, it is our conclusion that the trial court did not abuse its discretion in denying the motion. Section 95-1708, R.C.M. 1947, is patterned after a section of the Illinois Code of Criminal Procedure. Ill. Rev. Stat. 1971, Ch. 38, Sec. 114-4. The two code sections are identical in that section of the statute dealing with the discretion of the court and the required showing of diligence. Ill. Rev. Stat. 1971, Ch. 38, sec. 114-4(e); Section 95-1708(c), R.C.M. 1947. In construing their code section, the Illinois courts have established guidelines which are helpful in our determination here.

The transcript of the hearing at which the motion was argued reveals that neither counsel for appellants nor appellants themelses had any knowledge of the whereabouts of the missing witnesses. It was stated that Meader may have been in the Missoula area. As for Case, his last name was not learned until some time after the hearing so there was no indication at all of his whereabouts. There was no showing made by counsel or any of the witnesses presented, that these missing witnesses could be located within a reasonable time. In People v. Hudson, 97 Ill.App.2d 362, 240 N.E. 2d 156, 159, the Illinois Court of Appeals held that it was not an abuse of discretion for a court to deny a motion for a continuance where:

> "* * * counsel for defendant made no showing that there was any reasonable expectation or prospect of obtaining the presence of the absent witnesses."

- 4 -

Further, there was no showing made that testimony of the two witnesses would help the defense. There was a speculation that a palm print found at the scene of the crime and sent to the FBI for identification may have been the palm print of either Meader or Case. The additional factor that these two individuals may have availed themselves of the protection against self-incrimination and refused to testify, must be considered. Again in _Hudson,_ the Illinois court held:

> "Nor was there any showing that their [referring to the missing witnesses] testimony would be of any benefit to defendant."

In State v. Reyes, 99 Ariz. 257, 408 P.2d 400, 406, the Arizona court reached the same conclusion holding:

> "He [defendant] did not make any showing that he would be able to find the witness, or that she would testify in his behalf."

On this basis that court upheld the action of a lower court in denying a motion for a continuance (as not being an abuse of discretion).

Another issue is raised here concerning the right to a fair trial. Appellants claim that denial of this motion denied them their constitutional right to compulsory attendance of witnesses in their behalf. We see no merit in this contention. It has already been pointed out there was nothing in the record to indicate that these missing witnesses could be found in any reasonable length of time, or that if found they would even testify. In Babb v. United States, 210 F.2d 473, 475, (5th Cir.1954), where the issue of a fair trial was raised because of the denial of a motion for a continuance, the Federal court held:

> "The motion for continuance in this case was materially lacking in many essential features; it did not allege specifically or substantially what Tom E. Grubb would testify to if present, and consequently it did not appear that if present his testimony would be material. Moreover, there was no assurance that he would testify at all if present as, being a defendant, he could not legally be compelled to testify."

The second issue presented is whether the trial court was in error for refusing to suppress certain exhibits. Appellants contend these exhibits were the product of an unlawful arrest. The exhibits complained of are: a report of the FBI; a 1/4" drill bit; a pen light; a floor plan of the Sears store; a coat; a wood sample found in the coat; debris found in the pocket of the coat; and a pair of gloves.

The unlawfulness of the arrest is based upon the argument that Officer Wickhorst did not have probable cause to arrest appellants. As stated heretofore, Officer Wickhorst arrived on the scene knowing the burglar alarm had been set off. As he approached the building, he saw two persons standing near the building where the burglar alarm had been set off and when he approached these people they began to run. These facts must be applied to the test we have established for probable cause. In State v. Anderson, 149 Mont. 470, 478, 428 P.2d 611, we stated:

> "The lawfulness of arrest, without warrant, in turn, must be based on probable cause, which exists '"where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."'"

This principle was again stated in State ex rel. Glantz v. Dist. Court, 154 Mont. 132, 138, 461 P.2d 193:

> "* * * probable cause exists where the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a man in the belief that an offense has been or is being committed."

The facts here satisfy the requirements we have laid down; they are facts and circumstances which would lead a reasonable man to conclude that a crime had been committed or was in the process of being committed. Upon the decision that the arrest was lawful rests the conclusion that it was permissible for the officers to search appellants, under the principles allowing a search without a warrant incident to lawful arrest. Chimel v. California, 395 U.S. 752, 23 L ed 2d 685, 89 S.Ct. 2034; Preston v. United States, 376 U.S. 364, 11 L ed 2d 777, 84 S.Ct. 881.

- 6 -

The third issue raised is the use of accomplice Osborn's testimony to convict appellants. They allege there was not sufficient corroborating testimony and the court should not have allowed Osborn's statements. The rule in this situation is best expressed in 3 Jones on Evidence, 5th Ed., § 814, p. 1526:

> "The corroborating circumstances should tend not merely to prove that an offense has been committed, but they should have a tendency to identify the defendant as the criminal or to show his connection with the offense."

In State v. Barick, 143 Mont. 273, 283, 389 P.2d 170, we held that evidence which tends to connect the defendant with the crime is:

> "* * * that evidence which taken by itself leads to the inference, not only that a crime has been committed, but the prinsoner is implicated in it."

In this case, a drill bit of the type sold by Sears store, and a wood chip, identified by the FBI as being of the same type of wood as the cabinet surrounding the safe, were introduced into evidence. This evidence was taken from appellants shortly after their arrest and creates the inference stated in Barick as connecting appellants with the crime and not merely showing a crime has been committed. In addition, appellants' actions in running away from the scene of the crime must be considered. We hold as a matter of law that there was sufficient corroborating evidence to tend to connect appellants with the crime, therefore the use of Osborn's testimony was permissible.

For the foregoing reasons, the judgment of conviction is affirmed.

-----------------------------------------
Chief Justice

- 7 -

We Concur:

_Geo. S. Daly_

_John Conway Harrison_

_Frank I. Haswell_

_Wesley Castles_
Associate Justices.