No. 14900

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

HAROLD MELVIN FIFE,

Defendant and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District, Honorable C. B. Sande, Judge presiding.

Counsel of Record:

For Appellant:

Calvin J. Stacey argued, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mark Murphy argued, Assistant Attorney General, Helena, Montana
Harold Hanser, County Attorney, Billings, Montana

W. Corbin Howard argued, Deputy County Attorney, Billings, Montana

---

Submitted: February 21, 1980

Decided: [illegible]

Filed: [illegible]

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

On January 15, 1979, an information was filed in the Thirteenth Judicial District of the State of Montana, in and for the County of Yellowstone, charging defendant and Robert C. Rodgers, a/k/a Robert G. Lee, with robbery. Defendant entered a plea of not guilty. On April 17, 1979, after severance of the cases, trial in this matter was had. The court sat with a jury, which returned a verdict of guilty. Defendant appeals from the final judgment and a denial of his motion for a new trial.

Defendant and Rodgers were charged with a robbery at the home of Mr. and Mrs. Curtis Workman of Laurel, Montana, on December 14, 1978.

Mrs. Workman testified that on the night in question, two men, armed with guns and a knife, forcibly entered her home. Both men were wearing dark ski caps with nylon stockings over their faces and conversed using the names of "Billy Boy" and "George." Mrs. Workman stated that the two men talked during the robbery and that she had a good look at "George's" face and physical stature. The two men took cash and various other items including a plastic jug used by Mrs. Workman's brother, Dale Wolford, to store coins.

The Workmans' residence is next door to an apartment rented by Vernal Miller, his common-law wife Roxana Clymore, and defendant. On January 9, 1979, a search warrant was issued for Miller's apartment and during its execution, a plastic jug was recovered from the top of a dresser in Miller and Clymore's bedroom. Dale Wolford, who resided with the Workmans, testified that the plastic jug was the one taken by the two robbers. He also stated that on a prior occasion he had shown Clymore and Miller his coin collection.

Mrs. Workman indicated that there was a strong possibility she would be able to identify the individual known as "George" if he appeared in a lineup. A lineup was held, and Mr. and Mrs. Workman were given the opportunity to view defendant and others wearing the exact clothing worn by "George." The persons in the lineup also repeated the words "George" had uttered during the robbery. Mrs. Workman, however, failed to identify defendant as "George."

About three months after defendant's arrest, some pantyhose were found behind the seat of defendant's pickup. The pantyhose were discovered when the police stopped Vernal Miller, who was driving the pickup. Miller testified that he had used defendant's pickup on various occasions. There was testimony that Roxanna Clymore and Thomas Rightmeir, defendant's brother-in-law, had also used the pickup since defendant's arrest.

Roxanna Clymore testified that defendant and Rodgers were at her apartment the night of the robbery. She stated she saw two men force their way into the Workmans' residence that evening. She also stated that defendant made certain remarks to her about the robbery. She also testified that the plastic jug belonging to Wolford was found by the police in her bedroom. Defendant testified and denied that he had participated in the robbery.

The following issues are presented for consideration on appeal:

1. Did the District Court abuse its discretion by denying defendant's motion for continuance so that a material subpoenaed witness could be brought to court and present testimony in support of the defense? In the alternative, did the District Court err by not allowing the defense to read into the record the statement of the absent witness?

2. Did the District Court err by allowing into evidence, over defendant's objection, testimony and exhibits relating to Lee, a/k/a Rodgers, thus confusing the jury with irrelevant and prejudicial evidence not linked to the defendant or the issues presented in this case?

3. Did the District Court err by preventing the defendant from inquiring into a possible motive that the witness Clymore may have had to fabricate a story against the defendant?

4. Did the District Court err by failing to suppress as evidence the pantyhose and the plastic jug?

5. Did the District Court err by refusing to give defendant's proposed instruction nos. 7, 12 and 14?

Defendant contends the District Court abused its discretion by denying his motion for continuance near the end of his case-in-chief. The continuance was requested because a crucial defense witness, Russell Brohaugh, under subpoena by defense failed to respond as directed. In the alternative, the District Court erred by not allowing a portion of Brohaugh's statement to the police to be read into the record by the defense in lieu of Brohaugh's testimony.

The rule for continuances in Montana is set out in section 46-13-202, MCA, and in State v. DiGiallonardo (1972), 160 Mont. 379, 503 P.2d 43. The facts in this case present no reasons why a continuance should not have been granted. See, State v. Valmoja (1975), 56 Haw. 452, 540 P.2d 63; Salazar v. State (Alaska 1976), 559 P.2d 66.

During trial a situation developed where it became necessary, if possible, for the defense to demonstrate that defendant was not the robber "George," but rather Vernal

Miller was. Defendant urged that a police report filed by one Russell Brohaugh was crucial to his defense in this regard and would bolster the defense theory that Vernal Miller was the robber "George." The defense moved for a continuance so that Brohaugh might be located, or, in the alternative, that the pertinent portion of the police report be read to the jury.

In Montana, motions for continuance in criminal trials are provided for by section 46-13-202, MCA, which states:

> "(1) The defendant or the state may move for a continuance. If the motion is made more than 30 days after arraignment or at any time after trial has begun, the court may require that it be supported by affidavit.
>
> "(2) The court may upon the motion of either party or upon the court's own motion order a continuance if the interests of justice so require.
>
> "(3) All motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant. This section shall be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the state to a speedy trial."

Since subsection (3) requires that such motions be directed to the discretion of the trial court, we must consider whether the trial court's treatment of this matter was an abuse of discretion. State v. DiGiallonardo, 503 P.2d at 44.

In DiGiallonardo, this Court adopted guidelines which Illinois had established in People v. Hudson (1968), 97 Ill.App.2d 362, 240 N.E.2d 156, to determine whether there was an abuse of discretion. These guidelines were:

1. Reasonable expectation or prospect of obtaining the presence of the absent witnesses;

2. Whether the absent witnesses' testimony would help the defense; and,

3. Whether the absent witnesses would testify.

In DiGiallonardo, the absent witnesses were alleged to be co-participants in the crime. We held that the trial court acted properly in denying defendant's motion because: (1) the transcripts indicated appellants had no knowledge of the whereabouts of the missing witnesses; (2) the probative value of their testimony was speculative; and (3) there was a question as to whether the missing witnesses could be compelled to testify. 160 Mont. 382-384.

Defendant here seeks to distinguish DiGiallonardo and argues that in the instant case, the missing witness was a resident property owner in Laurel, Montana, who would therefore be easy to find and could not avail himself of Fifth Amendment protections. Further, the defense demonstrated by the police record that Brohaugh's testimony was crucial to the defense of the case.

Defendant has suggested further that this Court apply the standards set forth in Salazar v. State, supra. In Salazar, the Alaskan court set out the following factors to be considered in granting a motion for continuance:

> ". . . (1) whether the testimony is material to the case; (2) whether the testimony can be elicited from another source; (3) whether the testimony is cumulative; (4) probability of securing the absent witness in a reasonable time; (5) whether the requesting party was diligent and acting in good faith; (6) the inconvenience to the court and/or others; and (7) the likelihood that the testimony would have affected the jury's verdict. . ." 559 P.2d at 72.

The State focuses on the specific language of section 46-13-202, MCA, which requires that the movant demonstrate his diligence prior to the consideration of any of the other

factual issues. The State submits that if this Court finds that defendant attempted with due diligence to have Brohaugh testify, then this Court should look to the factors stated in Salazar to determine if the trial court abused its discretion.

There is nothing in the record to indicate that defendant failed to act diligently in attempting to secure the testimony of Brohaugh. He was properly subpoenaed. There is nothing in the record to indicate he would not show up until a short time before he was called to the stand and failed to appear. In fact, the record does not disclose that the court so much as issued a bench warrant to arrest the intended witness.

Both parties here seek to extend the guidelines set out by this Court in DiGiallonardo by use of the Salazar factors.

In reviewing the evidence, however, it becomes apparent that under either set of guidelines the District Court acted arbitrarily in denying defendant's motion for continuance, or not working out a method to admit a portion of the police record. It appears Brohaugh could have been found without unreasonable delay, a factor which is not entirely clear from the record, but oral argument revealed the case went to the jury around 5:00 p.m. and a continuance until the following day would have prejudiced no one. These facts were not disputed. Brohaugh had filed a police report on another theft and in some manner identified the present defendant in the company of a companion of whom he reported: "They called him George." The word "him" would have referred to Vernal Gary Miller. Defendant argues that his statement was a crucial factor in his defense theory that would tend to link Miller to the robber "George."

It was argued with some justification that there were problems with this testimony and therefore the quality came under attack by the State in terms of how much help it would be to the defense. This is a hard question and one of fact. Defendant's effort was in good faith; the testimony was not cumulative; the testimony was material; the court would not allow any consideration of an alternate hearsay source; the delay would have been minimal and no one would have been inconvenienced thereby; and, of course, the value, as stated above, is a close question which should have been resolved in favor of defendant, assuring him a fair trial. Conversely, without the testimony a conviction resulted.

The District Court abused its discretion when it failed to grant some kind of relief or continuance to defendant when a subpoenaed witness material to the defense failed to appear and testify.

If the evidence remains the same at a new trial, then defendant's proposed instruction no. 7 on circumstantial evidence must be given.

The judgment of the District Court is reversed, and the cause is remanded for a new trial.

Justice

We concur:

Chief Justice

Justices

Mr. Justice John Conway Harrison dissenting:

I must respectfully dissent.

In order to reverse a case on the issue of whether the trial judge abused his discretion in denying the appellant's motion for a continuance, we must look to the statutes and the case authorities established by this Court. I do not find an abuse here.

Controlling this matter is section 25-4-501, MCA, which provides:

> "Motion to postpone trial for absence of testimony. A motion to postpone a trial on grounds of the absence of evidence shall only be made upon affidavit showing the materiality of the evidence expected to be obtained and that due diligence has been used to procure it."

This language is mandatory and must be construed as such. See State v. Radi (1975), 168 Mont. 320, 325, 542 P.2d 1206.

Here, appellant did not file an affidavit demonstrating the materiality or that he had used due diligence to get the witness involved. In view of appellant's failure to comply with the statute, section 25-4-501, MCA, how can it be said that the District Court abused its discretion in denying a motion for a continuance. See, State v. Pascgo (1977), 173 Mont. 121, 566 P.2d 802; State v. Harvey (1979), ____ Mont. ___, 603 P.2d 661, 36 St.Rep. 2035.

The denial of a motion for continuance is within the sound discretion of the District Court, and it cannot, in my opinion, be error to deny such a motion unless there is a clear abuse of that discretion. See, State v. Olsen (1968), 152 Mont. 1, 445 P.2d 926; section 46-13-202, MCA.

Since the above section places the filing of an affidavit within the sound discretion of the trial court and no affidavit was required in the case, an examination of the

facts and the circumstances surrounding the denial of the motion should be looked to to determine whether the court abused its discretion.

Appellant relies on Salazar v. State (Alaska 1976), 559 P.2d 66, which outlines certain considerations that may be weighed in determining if the denial of the continuance is an abuse of discretion. The factual issues as stated in Salazar were:

> ". . . (1) whether the testimony is material to the case; (2) whether the testimony can be elicited from another source; (3) whether the testimony is cumulative; (4) probability of securing the absent witness in a reasonable time; (5) whether the requesting party was diligent and acting in good faith; (6) the inconvenience to the court and/or others; and (7) the likelihood that the testimony would have affected the jury's verdict. . ."

It should be noted that the very language of section 46-13-202, MCA, requires that the movant demonstrate his diligence prior to the consideration of any of the other factual issues.

Here, appellant had the clerk of the court issue a subpoena for Russell Brohaugh on April 11, 1979. That subpoena was served by counsel for appellant, Mr. Stacey, on April 15, 1979. The subpoena directed Brohaugh to appear at the Yellowstone County Courthouse at 9:00 a.m. on April 18, 1979.

Brohaugh was not called to the stand until after the afternoon recess. There is no showing in the transcript prior to the time Brohaugh was called that the court was informed that he had failed to appear as ordered in the subpoena. Nowhere in the record did Mr. Stacey, counsel for appellant, request from the court a bench warrant for Brohaugh. See, section 45-7-309(c), MCA. Nowhere in the record did

counsel request the court to order the sheriff's office to go and pick up Brohaugh as required by section 26-2-106, MCA. There is no indication in the record that Stacey attempted to contact Brohaugh between 9:00 a.m. and the time Stacey called Brohaugh to the stand.

The State does not deny that appellant up to the time of trial acted diligently, but from the very time that counsel discovered Brohaugh had failed to appear as instructed by the subpoena until he called Brohaugh to the stand, appellant exercised no diligence whatsoever. Under these circumstances, I would find that the court exercised its sound discretion in denying the motion for a continuance. I would affirm the judgment below.

John Conway Harrison
Justice