No. 00-459

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 84

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

TIMOTHY FIELDS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                    In and for the County of Yellowstone,
                    The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Gregory A. Jackson; Jackson Law Firm, Helena, Montana

      For Respondent:

            Hon. Mike McGrath, Attorney General; C. Mark Fowler,
            Assistant Attorney General, Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney; Ira Eakin
            Billings, Montana

                        Submitted on Briefs:  March 7, 2002

                                Decided:   May 2, 2002

Filed:

_____
                           Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1    Timothy Fields appeals from the Judgment and Commitment entered by the Thirteenth Judicial District Court, Yellowstone County, on a jury verdict convicting him of deliberate homicide and felony assault.  We reverse Fields' conviction of deliberate homicide and remand.

¶2    The issues are:

¶3    1.    Did the District Court abuse its discretion in denying Fields' motion for a recess to allow an expert witness to testify?

¶4    2.    Did Fields' counsel render ineffective assistance by failing to challenge a juror for cause or otherwise seek his removal?

BACKGROUND

¶5    On November 9, 1998, Fields' wife of seventeen years admitted to him that she was having an affair.  They argued and Fields held her at gunpoint in their home, after which he went to her paramour's workplace and shot him, fatally, five times in the head.  The State of Montana charged Fields with felony assault and deliberate homicide and the District Court appointed counsel to represent him.  Fields pled not guilty, and the parties began preparing for trial, which ultimately was scheduled for November 8, 1999.

¶6    On September 16, 1999, Fields substituted retained counsel. The District Court directed the State to turn over to Fields'

2

counsel copies of reports by Dr. William Stratford and Dr. Joseph Rich, psychiatrists who had examined Fields.

¶7 At an October 21, 1999 hearing, Fields' counsel informed the court he would present a defense of extreme mental or emotional stress but that Fields could not afford to pay the two psychiatrists to testify. Consequently, counsel requested the court to either order the State to pay the costs and fees of the psychiatrists or continue the November 8 trial date to allow Fields to raise the money to pay the experts. In response, the State moved to preclude the psychiatrists from testifying on grounds that whether Field was acting under extreme mental or emotional stress was not a proper subject for expert testimony under Rule 702, M.R.Evid., and, alternatively, that testimony from a second psychiatrist would be merely cumulative.

¶8 The District Court ordered the State to pay the costs and fees of the psychiatrists, but stated its intent to order Fields to reimburse the State for those expenses. It denied the State's motion to preclude expert testimony but, noting both experts were board-certified forensic psychiatric doctors who "have provided reports which basically say the same thing about your client," asked Fields' counsel why he could not proceed with just one expert. Counsel informed the court he was not prepared to respond as he had just recently received the doctors' reports and was scheduled to meet with each individually. The District Court reserved ruling on whether the testimony of the two psychiatrists would be cumulative.

3

¶9   In a pretrial brief, Fields' counsel responded to the State's attempt to bar cumulative evidence by describing the evidence from the two psychiatrists as corroborative and not cumulative, and as "additional evidence of a different character to the same point" pursuant to § 26-1-102(3), MCA.  Counsel represented that the two doctors had relied on different methodologies to complete their evaluations and reach their conclusions.  Counsel also argued it would be unfair to deny the defendant an expert witness simply because the witness might add three hours of trial time, particularly when the State's case was estimated to require "most of a week" while the defense estimated presentation of its case would take one day.

¶10  On the first morning of trial, Monday, November 8, 1999, the District Court denied the State's motion to restrict the defense to one expert.  It ruled that the two psychiatrists  used different methods to reach similar conclusions and that it would allow both to testify, subject to objections to specific questions as the testimony was presented.

¶11  Voir dire, opening statements--including representations by Fields' counsel that he would present two psychiatric experts in support of the defense of mitigated deliberate homicide--and the start of the State's case-in-chief consumed the first day of trial.  On Tuesday, the second day of trial, the District Court postponed the trial because Fields' counsel was ill.  On Wednesday morning, near the end of the State's presentation of its case, the District Court ruled it would not allow the defense to present the testimony

4

of a mental health worker who had assessed Fields shortly after he was jailed because the proposed witness was not qualified to offer an opinion on the elements of purpose or knowledge and, in any event, Fields would be allowed to call the two psychiatrists. Defense counsel then advised that "we'll be done too fast for Stratford's [testimony]."

¶12 Later that morning, the State rested. The court inquired regarding Dr. Rich's availability to testify and counsel replied he would be available at 1:30 p.m. The court and counsel then went off the record to talk about scheduling, after which the judge suggested the defense present a "short" witness. Following presentation of the "short" witness, trial recessed at 11:16 a.m. with Dr. Rich scheduled to testify at 1:30 p.m.

¶13 When Dr. Rich's testimony ended at 2:36 p.m. on Wednesday, the court again met with counsel. Fields' counsel informed the court that Dr. Stratford had been scheduled for Thursday based on the State's estimate of how long its case would take and the time estimated for defense witnesses appearing before him, and that Dr. Stratford's mother had died and he could not have appeared sooner in any event. As a result, the defense moved for a recess until the next morning to allow Dr. Stratford to appear. The State objected to the delay and renewed its objection that Dr. Stratford's testimony would be cumulative.

¶14 In response to questioning by the court, defense counsel acknowledged that Dr. Stratford had advised him he had returned to Montana on Tuesday night and conceded Dr. Stratford apparently

5

could have flown from Missoula to Billings to appear at the trial Wednesday morning.  Fields' counsel stated Dr. Stratford had been "out of contact," but had called at noon on Wednesday and said he would drive to Billings that night.

¶15   The District Court noted that Dr. Stratford knew the trial date and had testified at many trials.  It further stated, "I'm assuming Dr. Stratford knows that there's nothing cast in stone as far as how long it takes to try a case."  Counsel responded it would cost the defense extra to have an expert spend an extra day.  The court refused to grant the recess.

¶16  Fields' counsel then made an offer of proof that, if Dr. Stratford testified, he would state his opinion that Fields was suffering from severe mental or emotional distress at the time of the homicide, "and that he feels that this is the case that mitigated homicide was meant for."  The court noted Dr. Rich had already given his opinion that Fields was suffering from emotional stress, "so in that regard, I think it would be cumulative.  And I'm not sure that I would allow him to testify if there was a case of mitigated, that this is it."  Fields' counsel responded with an additional offer of proof that, in addition to materials relied on by Dr. Rich, Dr. Stratford did several more tests and an interview, and also read the interviews of Fields' wife and legal documents.

¶17   The defense presented one other witness and rested its case just after 3:00 p.m.  After jury instructions were settled, counsel presented closing arguments.  In its closing, the State attacked the defense case and Dr. Rich's testimony on several fronts,

6

including that Dr. Rich was the sole defense expert and had interviewed only Fields and no one else. The jury found Fields guilty of deliberate homicide and felony assault.

## DISCUSSION

¶18 1. Did the District Court abuse its discretion in denying Fields' motion for a recess to allow Dr. Stratford to testify?

¶19 It appears the District Court initially denied Fields' motion for a recess based on the State's objection regarding delay. The court also appears to have determined that Dr. Stratford's testimony would be cumulative.

¶20 A district court considers a motion for continuance of a criminal trial in light of the diligence shown by the moving party and may grant the continuance, in its discretion, if the interests of justice so require. Section 46-13-202, MCA. This Court reviews a ruling on a motion for a continuance to determine whether the district court abused its discretion. *State v. Borchert* (1997), 281 Mont. 320, 324, 934 P.2d 170, 173. When a continuance is requested and is reasonable, viewing all the relevant factors including the interests of justice and the defendant's right to a fair trial, a district court abuses its discretion in denying the request. *See Borchert*, 281 Mont. at 327, 934 P.2d at 175. Guidelines for determining whether there has been an abuse of discretion in ruling on a motion for continuance based on an absent witness are (1) whether there is a reasonable expectation or prospect of obtaining the presence of the absent witness; (2) whether the witness' testimony would help the defense; and (3)

7

whether the witness would testify. *State v. Fife* (1980), 187 Mont. 65, 69, 608 P.2d 1069, 1071-72 (citation omitted).

¶21  As a preliminary matter, the State contends the District Court had not ruled on its motion to preclude cumulative psychiatric testimony prior to denying Fields' request for a recess, but had declared only that it was reserving judgment depending on how the testimony came out at trial.  The record contradicts this contention.  The court reserved judgment only regarding objections to specific questions as the testimony was presented.  On the first morning of trial, it clearly denied the State's motion to prohibit both experts from testifying based on a "cumulative evidence" theory, and stated it would allow both experts to testify.

¶22  Although the District Court did not expressly address whether Fields was sufficiently diligent to satisfy the § 46-13-202, MCA, criteria regarding the moving party's diligence in seeking the continuance, the State argues on appeal that Fields did not meet that requirement.  The State points out that, on the afternoon of the first day of trial, it informed the court and Fields of its intent to rest its case by noon on Tuesday, and defense counsel said nothing at that time or on the second day of trial, postponed due to defense counsel's illness, about not being able to secure Dr. Stratford's attendance.  Similarly, according to the State, defense counsel said nothing at the beginning of the third day of trial, although he knew that the State was estimating it would complete its case by noon.  Finally, the State maintains that, when Fields' counsel finally said something about Dr. Stratford, he gave

8

additional expense to the defense as a reason for not having him available until the next day. The State contends these facts do not demonstrate due diligence.

¶23 While the record supports the State's specific factual assertions in this regard, it also discloses that those assertions do not represent the totality of the circumstances relating to diligence. In a brief comment made immediately after its pretrial ruling that it would allow both psychiatrists to testify, the District Court indicated it was aware of the possibility that Dr. Stratford might not testify at all. Defense counsel's equally brief response to that comment indicates counsel was unsure whether Dr. Stratford would be available, although no reason for his possible unavailability is stated in that portion of the record.

¶24 Further, while it is true that defense counsel mentioned the additional expense of having Dr. Stratford available a day earlier than expected as a reason for not presenting his testimony on Wednesday afternoon, counsel also informed the court that Dr. Stratford's mother had died and he had been out of contact until noon on Wednesday. Moreover, while the State had estimated trial would last four to five days, presentation of the State's case in less than a day and a half clearly proceeded much more quickly than originally expected. The defense should not be penalized for failing to anticipate this situation. Stratford was prepared to appear on what would have been the fourth day of trial, which easily fit with the schedule anticipated in the trial briefs. Finally, a death in the family generally is not an event which can

9

be planned for or anticipated with certainty; consequently, the defense in a deliberate homicide case should not be penalized for an expert witness being out of contact for several days as the result of such an event. We conclude that, under the facts before us, Fields met the diligence requirement contained in § 46-13-202, MCA.

¶25 In terms of the *Fife* factors, there was more than "a reasonable expectation" of obtaining the presence of the absent witness in this case. Dr. Stratford would have been available to testify if the trial were continued from 2:36 p.m. on Wednesday until Thursday morning. According to defense counsel and, indeed, the District Court's earlier ruling that the testimony would not be merely cumulative of Dr. Rich's, Dr. Stratford's testimony clearly would help the defense on the only disputed aspect of the deliberate homicide charge. Finally, Dr. Stratford's willingness to support Fields' defense that he acted under the influence of extreme mental or emotional stress and, therefore, was guilty of mitigated deliberate homicide instead of deliberate homicide, is undisputed on the record before us.

¶26 All relevant factors, including the interests of justice and the defendant's right to a fair trial, must be considered in ruling on the reasonableness of a motion for a continuance or recess. *See Borchert*, 281 Mont. at 327, 934 P.2d at 175. Here, the charged offense at issue is deliberate homicide; the delay requested was less than one-half day in a case originally estimated to require a week; the District Court had ruled Dr. Stratford's testimony was

10

not merely cumulative; based on that ruling, Fields' counsel had told the jury he would present two psychiatric experts; Dr. Stratford's testimony would go directly to Fields' defense of mitigated deliberate homicide; and, finally, the State used in its closing argument the facts that Fields presented only one expert and that expert, Dr. Rich, had interviewed only Fields. On this record, and considering the interests of justice and Fields' right to a fair trial, we conclude the motion for a recess was reasonable. On that basis, we hold the District Court abused its discretion in refusing to grant Fields' motion for a recess to allow Dr. Stratford to testify.

¶27 2. Did Fields' counsel render ineffective assistance by failing to challenge a juror for cause or otherwise seek his removal?

¶28 Although resolution of Issue 1 results in the reversal of Fields' conviction of deliberate homicide, it has no effect on his conviction of felony assault, as Dr. Stratford's testimony was not addressed to any aspect of that charge. Therefore, we address the second issue Fields has raised on appeal insofar as it might affect his conviction on the felony assault charge.

¶29 Following a noon recess before trial began but after the jury was selected, juror Billy Ellis said he had something to tell the court. Ellis stated that, although the victim's name was mentioned during voir dire, "the name didn't click" at that time, but he later realized he had known the victim's brother in high school. He stated it had been "years" and he had had no contact with the

11

victim's brother since then. The judge asked if this association would influence his decision, and Ellis said it would:

> I would be worried about the future. Let's say I was a juror, they knew I was a juror and something happened, you know, I don't know which way, whatever, I'm just thinking, you know, me and my security and family or whatever, you know, if I did something wrong and sent someone--you know what I mean?

The court told Ellis that the victim's brother would not be a witness and asked him if he would be able to "just listen to the testimony and evidence that comes in from the witness stand," and Ellis indicated he could. Ellis remained on the jury.

¶30 Fields' counsel asked no questions and did not engaged in the discussion with Ellis. On appeal, Fields contends this failure to act amounted to ineffective assistance of counsel.

¶31 Before reaching the merits of an ineffective assistance of counsel claim on direct appeal, we must decide whether such allegations are properly before us or whether the allegations should be pursued in a petition for postconviction relief pursuant to §§ 46-21-101 through -203, MCA. When a claim of ineffective assistance of counsel is based on facts of record, it may be raised on direct appeal. When, however, the allegations cannot be documented from the record, those claims must be raised in a petition for postconviction relief. *State v. White*, 2001 MT 149, ¶ 12, 306 Mont. 58, ¶ 12, 30 P.3d 340, ¶ 12 (citation omitted). The reasoning behind this rule is that a silent record cannot rebut the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance under this Court's

12

analysis based on *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *White*, ¶ 13 (citation omitted).

¶32  In distinguishing on-record and off-record actions of counsel, the definitive question is "why" counsel acted or failed to act. Where counsel has failed to make an objection and the record does not fully explain why counsel took this course of action, the matter is best suited for postconviction proceedings which permit a further inquiry into whether the particular representation was ineffective. *White*, ¶ 20.

¶33  Here, the record contains no indication of why Fields' counsel did not question or challenge juror Ellis after Ellis made his statements.   Therefore, this claim should be raised in a postconviction proceeding where the record may be expanded, and we decline to consider the issue on direct appeal.

¶34  Fields' conviction of deliberate homicide is reversed and this case is remanded for a new trial on the deliberate homicide charge.


                              /S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER