No. 04-740

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 166

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

RAYMOND TOULOUSE, JR.,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. ADC-03-615(B),
The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

           Jeffry L. Olson, Attorney at Law, Great Falls, Montana

        For Respondent:

           Hon. Mike McGrath, Attorney General; Joslyn M. Hunt,
Assistant Attorney General, Helena, Montana

           Brant Light, Cascade County Attorney; John Parker and Marty Judnich,
Deputy County Attorneys, Great Falls, Montana

Submitted on Briefs:  May 31, 2005

Decided:  June 28, 2005

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Raymond Toulouse, Jr. (Toulouse), appeals from his conviction for aggravated kidnapping and assault in the Eighth Judicial District Court, Cascade County.  We affirm.

¶2     Toulouse raises the following issues on appeal:

¶3     1.  Whether the District Court violated Toulouse's due process rights by denying Toulouse's motion for a continuance.

¶4     2.  Whether the State presented sufficient evidence to prove Toulouse guilty beyond a reasonable doubt.

BACKGROUND

¶5     The State charged Toulouse with one felony count of assault with a weapon and three separate felony counts of aggravated kidnapping after Toulouse brandished a .9mm High Point semi-automatic at three other passengers in the car in which he was riding.  Rebekah Greer (Greer) held a house party earlier that night that attracted a number of young people who played key roles in this drama including Greer, Toulouse, Andrea Richardson (Richardson), and Victor Webster (Webster).

¶6     Richardson's boyfriend, Josh Curtis (Curtis), along with his friend Richard Barick (Barick), picked up Richardson from Greer's party and they drove to Curtis's home to play video games.  About an hour-and-a-half later, Toulouse, Greer, and Webster went to Curtis's house and asked Curtis for a ride.  The three claimed to need a ride because their car had run out of gas near Curtis's home.  Toulouse asked Curtis to drive them around town to search for Toulouse's mother's car because it had a gas can.  Curtis agreed and all six youths got into Curtis's mother's car.  Curtis drove with Richardson and Barick as passengers in the

2

front seat and Toulouse, Webster and Greer rode in the back seat. They could not locate Toulouse's mother's car.

¶7    The parties' stories, not surprisingly, diverge dramatically about what happened after Toulouse and his friends joined the group. Curtis, the driver, and Richardson and Barick, the front seat passengers, alleged that Toulouse pointed a gun toward Curtis. According to their version, Curtis grabbed the gun and struggled for control of it. The car rolled into a light pole and the gun discharged sending a round through the front windshield. Curtis and the front seat passengers, Richardson and Barick, ran to the nearby police station and Toulouse along with the other back seat passengers, Webster and Greer, ran in the opposite direction. Toulouse grabbed the gun from the car as he ran away. Webster later admitted to throwing the gun into the Missouri river.

¶8    Meanwhile, at the police station, Sergeant Chris Hickman (Sergeant Hickman) met with Curtis, Richardson and Barick. Sergeant Hickman, according to standard police procedure, separated them into individual interview rooms in order to ensure continuity in their statements. Hickman testified that all three gave a detailed account of the events that were fairly specific and consistent with one another.

¶9    Toulouse later learned of the allegations against him and voluntarily appeared at the police station to give his version of events. Toulouse disputed Curtis's story and claimed that Curtis had pointed the gun at him. Toulouse later asserted at trial that Curtis had become jealous upon discovering that Toulouse and Richardson had engaged in a sexual relationship behind Curtis's back. Webster and Greer corroborated Toulouse's version.

¶10    All of the youths involved in the incident, along with the investigating police officers,

3

and several other witnesses, testified at the bench trial. When the defense reached the end of its case, Toulouse's counsel informed the District Court that he had subpoenaed Toulouse's sister, Juanita Garcia (Garcia), to testify on Toulouse's behalf, but she was too ill due to her cancer and chemotherapy treatment to attend the trial. Toulouse requested a continuance until the following morning to permit Garcia to testify.

¶11 The District Court initially allowed Toulouse a 15-minute recess to inquire into whether Garcia would be able to testify the next day should it grant the continuance. Toulouse could not provide such assurance to the District Court as Garcia and her family apparently advised Toulouse that Garcia's condition likely would not change by the next day and that, due to her cancer, she would remain nauseous, dizzy, and unable to walk. The District Court denied Toulouse's request based on Toulouse's inability to provide a reasonable assurance that Garcia would be able to testify the following morning.

¶12 Toulouse instead presented the District Court with a report made by his investigator, Robert Hoxter, Jr. (Hoxter), to whom Garcia earlier had made a statement. The District Court did not review the report when making its determination, but allowed the report to be filed under seal for any future appellate review.

¶13 The District Court found Toulouse guilty on all counts and sentenced him to twenty years for assault with a weapon, and eighty years with forty years suspended for each of the three counts of aggravated kidnapping, with all sentences to run concurrently. Toulouse appeals the District Court's denial of his motion for a continuance and his conviction.

STANDARD OF REVIEW

¶14 We review a district court's ruling on a motion for a continuance for an abuse of

4

discretion. *State v. Garcia*, 2003 MT 211, ¶ 10, 317 Mont. 73, ¶ 10, 75 P.3d 313, ¶ 10. We review questions regarding the sufficiency of the evidence to determine whether, after reviewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. York*, 2003 MT 349, ¶ 10, 318 Mont. 511, ¶ 10, 81 P.3d 1277, ¶ 10.

DISCUSSION

ISSUE ONE

¶15    Whether the District Court violated Toulouse's due process rights by denying Toulouse's motion for a continuance.

¶16    Toulouse argues that the District Court violated his due process rights when it denied his motion for a continuance to secure Garcia's testimony. A district court considers a motion for a continuance in light of the diligence shown on the part of the moving party and may grant the continuance, in its discretion, if the interests of justice so require. Section 46-13-202(2) and (3), MCA; *Garcia*, ¶ 14. We do not overturn a district court's ruling on a motion for a continuance absent a showing of prejudice to the moving party. *State v. Klemann* (1981), 194 Mont. 117, 120, 634 P.2d 632, 634. A defendant moving for a continuance to secure an absent witness must demonstrate that a reasonable expectation or prospect of obtaining the presence of the absent witness exists, that the witness's testimony would help the defense, and that the witness would testify. *State v. Fields*, 2002 MT 84, ¶ 20, 309 Mont. 300, ¶ 20, 46 P.3d 612, ¶ 20 *citing State v. Fife* (1980), 187 Mont. 65, 69, 608 P.2d 1069, 1071-72.

¶17    We held in *Fields* that the district court abused its discretion when it denied Fields'

motion for a continuance to secure an absent witness. Fields' absent witness was available, however, and was in fact originally scheduled to testify the next day of trial. Here Toulouse offered no such reasonable expectation or prospect of obtaining Garcia's testimony. He requested a delay until the following day to secure Garcia's testimony. The District Court denied Toulouse's request for a continuance because it had "no reasonable assurance at all that this witness is going to become available by tomorrow[.]" Indeed, Toulouse gave the District Court no assurance that Garcia could testify the next day, the next week, or the next month. Further, Toulouse knew, as the District Court pointed out, that "this has been the time set for trial in this matter for a significant amount of time . . . ." In *State v. Elliott*, 2002 MT 26, ¶ 44, 308 Mont. 227, ¶ 44, 43 P.3d 279, ¶ 44, we held that the court did not abuse its discretion when it denied Elliott's motion for a continuance, in part because Elliott had ample opportunity to arrange for her witnesses to appear. Toulouse likewise had ample opportunity and failed to make any kind of arrangements for Garcia to appear.

¶18    The parties also dispute whether Toulouse had served Garcia with a subpoena to secure her testimony. In *Fife*, 187 Mont. at 71, 608 P.2d at 1073, the district court abused its discretion in denying Fife's motion for a continuance where Fife properly had subpoenaed a material witness who may have provided exculpatory testimony. Fife's proper service of the subpoena constituted evidence of his due diligence to secure the witness's attendance. *Fife*, 187 Mont. at 70, 608 P.2d at 1072. Conversely, the district court in *State v. Pagsco* (1997), 173 Mont. 121, 124, 566 P.2d 802, 804, properly denied the Pagsco's oral motion for a continuance to secure the presence of a prospective witness for whom a subpoena had been issued, but not served, based upon Pagsco's failure to demonstrate that he had exercised

6

due diligence to procure the presence of the witness.

¶19 The District Court in this matter allowed Toulouse a fifteen-minute recess so that Toulouse could inquire into Garcia's availability for the next day. Toulouse's efforts proved inconclusive as Garcia's illness did not appear to be abating any time in the near future, if at all. Thus, whether Toulouse may have properly served Garcia with the subpoena in this matter does not offset the fact that Toulouse could not offer any assurance to the District Court that she would be available in the near future to testify.

¶20 Toulouse also has not demonstrated that Garcia's testimony would have aided his defense. *Fields*, ¶ 20. Toulouse asserts that Garcia would have testified to unique facts and incidents not discussed by other witnesses. Toulouse contends that Garcia's testimony supported his theory that Curtis was the aggressor, and corroborated his testimony and that of his witnesses, that he and Richardson were having a sexual relationship that angered Curtis. Toulouse argues that this sexual relationship provided Curtis with the motive to make good on his earlier threats to harm him. Toulouse also claims that Garcia's testimony would have refuted Richardson's testimony that Richardson had not been in a sexual relationship with Toulouse thereby calling Richardson's credibility into question.

¶21 A review of the record and Hoxter's report, which the District Court accepted and sealed for appellate review, however, fails to illuminate any further information that Garcia would have provided beyond what already had been offered during the trial. The court received testimony from at least three witnesses that Curtis had been the aggressor, that Curtis had threatened Toulouse, and that Curtis had been angered by the fact that Toulouse and Richardson had a sexual relationship while Richardson was still dating Curtis. Garcia's

7

potential testimony would have been cumulative at best.

¶22    We also point out that when a party moves to postpone a trial on the grounds of the absence of evidence, such as an absent witness, the motion shall be made only upon an affidavit showing the materiality of the evidence expected to be obtained and that due diligence has been used to procure it.  Section 25-4-501, MCA.  The language of § 25-4-501, MCA, is mandatory and must be construed as such.  *State v. Harvey* (1979), 184 Mont. 423, 432, 603 P.2d 661, 666.  Toulouse failed to file an affidavit demonstrating the materiality of Garcia's testimony or that he engaged in due diligence to obtain her testimony.  In view of Toulouse's failure to comply with § 25-4-501, MCA, it cannot be said the District Court abused its discretion in denying the motion for a continuance.  *Harvey*, 184 Mont. at 432, 603 P.2d at 666.

¶23    When viewing all the relevant factors surrounding the reasonableness of Toulouse's continuance motion, we cannot conclude that the District Court's denial impeded the interests of justice or Toulouse's right to a fair trial.  *See Fields*, ¶ 26.  As such, we hold that the District Court did not abuse its discretion when denying Toulouse's motion for a continuance.

ISSUE TWO

¶24    Whether the State presented sufficient evidence to prove Toulouse guilty beyond a reasonable doubt.

¶25    Toulouse argues that the evidence presented at trial does not support guilt beyond a reasonable doubt on any of the offenses charged because substantial evidence, presented by numerous witnesses by both parties, supports Toulouse's theory that Curtis brandished the

8

gun. Toulouse further maintains that the evidence suggests that he and Richardson had engaged in a sexual relationship that drove Curtis to want to harm Toulouse. He contends that the evidence did not establish a motive for Toulouse to harm Curtis.

¶26 It fell within the District Court's province as fact-finder to assess the credibility and weight to be afforded to the witnesses' testimony in an effort to determine Toulouse's guilt. *State v. Boucher*, 1999 MT 102, ¶ 19, 294 Mont. 296, ¶ 19, 980 P.2d 1058, ¶ 19. The District Court heard conflicting testimony from all six passengers in the car during the incident: Curtis, Richardson, Barick, Toulouse, Webster, and Greer. The State also presented testimony from Sergeant Hickman and Officers Marty Bower, Doug Mahlum, John Cameron, and Patrick Brinkman who investigated the incident and interviewed the parties. Their investigation led to their conclusion that gunshot residue on Curtis's hand was inconsistent with a person holding a gun when it discharges and that the trajectory of the bullet hole in the windshield buttressed Curtis's version.

¶27 The defense presented testimony from Toulouse, his mother, Peppy Allery, and Steven Azure, a friend to Curtis and Toulouse. After reviewing the record, we are satisfied that the District Court heard all of the conflicting stories, waded through the evidence presented, and determined that the State presented sufficient evidence to find Toulouse guilty beyond a reasonable doubt.

¶28 Affirmed.

/S/ BRIAN MORRIS

We Concur:

9

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER