**FILED**

June 10 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0116

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 151

STATE OF MONTANA,

　　　　Plaintiff and Appellee,

　v.

CHRISTOPHER LEE GLEED,

　　　　Defendant and Appellant.

APPEAL FROM:　　District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 2012-223
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　Palmer A. Hoovestal, Hoovestal Law Firm, PLLC, Helena, Montana

　　　　For Appellee:

　　　　Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana

　　　　Leo J. Gallagher, Lewis and Clark County Attorney, Melissa Broch, Deputy County Attorney, Helena, Montana

　　　　　　　　Submitted on Briefs:　May 15, 2014
　　　　　　　　　　　　Decided:　June 10, 2014

Filed:

_____
　　　　　　　　Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Christopher Gleed appeals from a judgment of the First Judicial District Court, Lewis and Clark County, based on his conviction of aggravated assault of his young son, G.C. We reverse and remand for a new trial. We restate the sole dispositive issue on appeal as follows:

¶2    Did the District Court abuse its discretion when it denied Gleed's motion for continuance?

## BACKGROUND

¶3    In August 2012, the State charged Gleed with aggravated assault, alleging that Gleed intentionally submerged G.C. in scalding water after G.C. came to the emergency room with severe burns over the majority of his body. On August 23, 2012, Gleed was arraigned and pleaded not guilty. The District Court discussed with the parties the setting of a trial date. The State expressed it had several out-of-state expert witnesses and requested a first trial setting in February, which was still within 200 days of Gleed's arrest. Defense counsel objected to such a late date. Although the State expressed concern about setting a trial date in mid-December, the District Court set a trial date of December 17, 2012, and suggested that if scheduling problems developed the parties could advise the District Court within a couple of weeks.

¶4    In November 2012, Gleed filed a notice of expert disclosure and an expert report of San Francisco-based burn expert Dr. Jerold Z. Kaplan. In his expert report, Dr. Kaplan concluded that G.C.'s burns were not caused by intentional child abuse, stating "I am personally certain that this is an accidental injury, and would be happy to so testify in

2

deposition, or court, if necessary."  At the end of his report, Dr. Kaplan stated, "I will be on vacation [in New Zealand] from Nov 16 through Dec 20, but may be paged until Nov 15 and e-mailed at any time."  Later that month, Gleed disclosed a witness and exhibit list to the State, which included Dr. Kaplan.  The State's witness list identified 22 witnesses.

¶5     Trial began on Monday, December 17.  During voir dire, defense counsel, the State, and the District Court all repeatedly told jurors that the case could last until Friday, December 21.  The District Court advised the jury panel during voir dire:

> we are anticipating—I talked with the lawyers about how long this case is going to last.  Everybody wants to know that.  And we're—they're telling me it could last three days or could last all week.  And I know that is an issue as well.

Later during voir dire, the District Court advised:

> So—and the final thing, . . . is that we've anticipated the trial will be over–we have wild estimates here—from Wednesday, possibly, to maybe Friday.  I always think it's best in a case like that to err on the conservative side so you're not disappointed and say Friday.  And I'm anticipating it will be sooner.  And I'll keep you posted.

The State similarly advised the panel during voir dire that:

> So as far as the length of this trial, my best estimate, and I'm often times wrong, but my best estimate is this is going to go to the jury probably on Thursday. It may go to Friday, but my best estimate is that this case may end as soon as Wednesday.  I don't know.  But I'm betting it's going to—you are going to get it Thursday.  It might go to Friday.

¶6     In his opening statement, defense counsel told the jury that they would have a burn expert, Dr. Kaplan, who would explain the relationship between water temperature and the time it takes to burn skin.  Defense counsel represented that Dr. Kaplan would corroborate that G.C.'s burns were accidental. Defense counsel, however, was not clear

3

in what manner Dr. Kaplan's testimony would be presented to the jury and stated, "We have an expert witness we're going to bring here hopefully. He's in New Zealand right now. And hopefully we can get him here by the time this trial is over . . . we're going to either bring him up here or have him testify by video conference."

¶7 During its case-in-chief, the State presented expert testimony from a pediatrician specializing in child abuse, who stated that the burns were indicative of forced submersion in scalding water, and thus were more likely the result of child abuse. The State rested ahead of schedule on Tuesday, December 18. Defense counsel thereupon advised the court, "Our expert I think is in transit from New Zealand to San Francisco. I don't think we're going to be able to get him. And accordingly, at the end of Mr. Gleed's testimony, I would ask the Court to recess, take a recess for one day, so that we can get that expert witness here." The State objected and the following colloquy transpired:

> County Attorney: Your Honor, I object to that. We've known—this trial has been set for a long, long time, and why—we've known when the expected trial date was going to end. Why we should put this off and keep the jury hanging, and the Court's time, is something I don't understand.
> Court: Okay. Can we do it by video?
> County Attorney: I don't care if we do it by video.
> Defense Counsel: Your Honor, if I can get him by video, we'll certainly do that, but I'm not certain we can arrange that.
> Court: Well, we'll see where we go tomorrow. I'll take that under advisement and see where we're at tomorrow, and the efforts to get him on video. And we would certainly accommodate that. Okay.

¶8 Late in the morning of Wednesday, December 19, after all other defense witnesses had been called, defense counsel moved the court to recess for a day and a half until Dr. Kaplan would be available to testify. Defense counsel advised, "Your Honor, we cannot get our expert here. And so I would request that the Court recess until we can get our

4

expert here, and I suspect that is Friday." The court responded, "Okay. I'll have to deny that. I'm sorry."

¶9 There is no further discussion or explanation of the matter in the record. At 2:05 p.m. on December 19, the jury was dismissed to deliberate, and they found Gleed guilty of aggravated assault. Gleed was sentenced to 20 years in Montana State Prison. Although Gleed raises multiple issues on appeal, we will only address the issue regarding the motion for continuance.

## STANDARD OF REVIEW

¶10 We review a district court's ruling on a motion for continuance for an abuse of discretion. *State v. Toulouse*, 2005 MT 166, ¶ 14, 327 Mont. 467, 115 P.3d 197 (citing *State v. Garcia*, 2003 MT 211, ¶ 10, 317 Mont. 73, 75 P.3d 313). A trial court abuses its discretion when it "'acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice.'" *State v. Hicks*, 2013 MT 50, ¶ 14, 369 Mont. 165, 296 P.3d 1149 (quoting *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811).

## DISCUSSION

¶11 A district court considers a motion for continuance in a criminal trial in light of the diligence shown by the moving party, and may grant the continuance in its discretion, if the interests of justice so require. Section 46-13-202, MCA; *Garcia* ¶ 14; *State v. Fields*, 2002 MT 84, ¶ 20, 309 Mont. 300, 46 P.3d 612. "When a continuance is requested and is reasonable, viewing all the relevant factors including the interests of justice and the defendant's right to a fair trial, a district court abuses its discretion in denying the

5

request." *Fields*, ¶ 20 (citing *State v. Borchert*, 281 Mont. 320, 327, 934 P.2d 170, 175). In *State v. Fife*, 187 Mont. 65, 69, 608 P.2d 1069, 1071-72 (1980) (citing *State v. DiGiallonardo*, 160 Mont. 379, 382-84, 503 P.2d 43, 44 (1972)), we articulated the three factors to consider in determining whether a district court has abused its discretion in ruling on a motion for continuance based on an absent witness: (1) whether a reasonable expectation or prospect of obtaining the presence of the absent witness exists; (2) whether the witness's testimony would help the defense; and (3) whether that witness would testify. Establishing whether a district court abused its discretion in denying a motion for continuance depends not on the application of a mechanical test but rather on "the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *State v. Klemann*, 194 Mont. 117, 120-21, 634 P.2d 632, 635 (1981) (citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 841, 850 (1964)).

¶12 As a preliminary matter, the civil statute governing a motion for continuance requires the moving party to include an accompanying affidavit that shows the materiality of the evidence expected to be obtained and that due diligence has been used to procure it. Section 25-4-501, MCA. In contrast, the criminal statute governing a motion for continuance states that "the court *may* require that [a motion for continuance] be supported by affidavit." Section 46-13-202(1), MCA (emphasis added). The State cites *Toulouse* to stand for the proposition that a motion for continuance in a criminal case requires a supporting affidavit showing the materiality of the evidence expected to be obtained and that due diligence has been used to procure it pursuant to § 25-4-501, MCA.

6

The State continues that because Gleed failed to present an affidavit demonstrating the materiality of Dr. Kaplan's testimony and his diligence in procuring it, the District Court did not abuse its discretion by denying his motion for continuance. However, § 25-4-501, MCA, does not govern criminal proceedings, and *Toulouse* merely refers to the civil statute in dicta. *Toulouse*, ¶ 22. It is clear that § 46-13-202, MCA, governs a motion for continuance in criminal matters, and does not require an accompanying affidavit unless specifically required by the court. *State v. Morales*, 284 Mont. 237, 240, 943 P.2d 1286, 1288 (1997) ("The controlling statute to determine whether the District Court should have granted Morales's motion for a continuance is § 46-13-202(3), MCA."); *see also Fife*, 187 Mont. at 68, 608 P.2d at 1071; *State v. Sotelo*, 209 Mont. 86, 90, 679 P.2d 779, 782 (1984); *Borchert*, 281 Mont. at 324, 934 P.2d at 173; *State v. Martinez*, 1998 MT 265, ¶ 22, 291 Mont. 265, 968 P.2d 705; *State v. Root,* 1999 MT 203, ¶ 12, 296 Mont. 1, 987 P.2d 1140; *Fields*, ¶ 20; *Garcia*, ¶ 14. There is no indication in the record that the District Court, in its discretion, imposed this affidavit requirement on Gleed's motion for continuance. Thus, the fact that Gleed did not include an affidavit with his motion for continuance is not dispositive.

¶13 Despite the State's attempts to distinguish it from the facts at hand, our decision in *Fields* proves instructive to the instant case. In *Fields*, we held that the district court abused its discretion in denying the defendant's motion for continuance in a deliberate homicide case. *Fields*, ¶ 26. Fields presented a defense of extreme mental or emotional stress, and planned to have two psychiatrists testify as expert witnesses about his mental state. *Fields*, ¶ 7. Trial began on a Monday, and was expected to last four or five days.

7

*Fields*, ¶¶ 9, 11, 22. Fields told the jury about these two experts during voir dire and his opening statement. *Fields*, ¶ 11. The trial progressed ahead of schedule, and defense counsel noted that they would be "done too fast" in order to hear the testimony of one of the psychiatrists, Dr. Stratford. The State rested, and by Wednesday afternoon Fields had called all defense witnesses except for Dr. Stratford, who was scheduled to testify on Thursday morning. *Fields*, ¶ 13. Although Dr. Stratford could have appeared on Wednesday afternoon, he was unwilling to appear ahead of schedule because he was dealing with the recent death of his mother. *Fields*, ¶¶ 13-14, 24. Fields then asked to recess until Thursday morning, to allow for Dr. Stratford to appear as originally scheduled. *Fields*, ¶ 13. The State objected, and the District Court denied Fields' motion, stating that Fields had already presented the testimony of one psychiatrist who testified that Fields was suffering from emotional stress, and therefore Dr. Stratford's testimony was unnecessary. *Fields*, ¶¶ 15-16.

¶14 On appeal, we held that the district court's denial of Fields' motion for continuance was an abuse of discretion. After considering all relevant factors, we explained:

> Here, the charged offense at issue is deliberate homicide; the delay requested was less than one-half day in a case originally estimated to require a week; . . . Fields' counsel had told the jury he would present two psychiatric experts; Dr. Stratford's testimony would go directly to Fields' defense of mitigated deliberate homicide; and, finally, the State used in its closing argument the facts that Fields presented only one expert . . . . On this record, and considering the interests of justice and Fields' right to a fair trial, we conclude the motion for a recess was reasonable. On that basis, we hold the District Court abused its discretion in refusing to grant Fields' motion for a recess to allow Dr. Stratford to testify.

8

*Fields*, ¶ 26.

¶15    *Fields* directly applies to the case at hand.  The State contends that Gleed was not sufficiently diligent to satisfy the § 46-13-202, MCA, criteria because his motion was "last-minute," and because Gleed knew about Dr. Kaplan's unavailability "since at least November 12, 2012," yet "did nothing to alert the district court."  However, the record does not support the State's specific factual assertions in this regard, and, additionally, these assertions do not represent the totality of the circumstances regarding Gleed's diligence.  The record shows that the State, and ostensibly the District Court, also knew of Dr. Kaplan's unavailability, as it was clearly stated in the expert report that Gleed filed on November 12.  Just as in *Fields*, the court, the State, and Gleed's counsel, all made repeated statements to the jury that the trial could take all week.  *See Fields*, ¶¶ 9, 11, 22. The fact that the State included 22 names on its witness list supports the notion that the trial could have lasted all week.  Thus, it is clear that the State, Gleed, and the District Court were operating under the assumption that the trial could last until Friday. Additionally, on Tuesday, once it was clear that the trial was progressing faster than planned, Gleed informed the court that he was planning to move for a continuance in order to allow for Dr. Kaplan to testify.  Here, Gleed's actions were at least comparable to those of Fields, who did not specifically inform the court that he was planning to move for a continuance in advance, but merely alerted the court that they would "be done too fast" in order to hear the other expert's testimony.  *Fields*, ¶ 11.  We conclude that, under the facts before us, Gleed met the diligence requirement contained in § 46-13-202, MCA. *See Fields*, ¶¶ 22-24; *Fife*, 187 Mont. at 70, 608 P.2d at 1072; *Borchert*, 281 Mont. at

9

326-27, 934 P.2d at 175; *compare State v. Duncan*, 2008 MT 148, ¶ 40, 343 Mont. 220, 183 P.3d 111 (Where defendant had already been granted two continuances over a period of two and a half years in a sexual assault case, and moved for a third continuance two days before trial stating he needed more time to prepare, we held that the trial court did not abuse its discretion in denying defendant's motion because defendant failed "to make any showing of diligence in preparing for the trial" or "explain why . . . he was not afforded sufficient time to prepare his defense."). In drawing this conclusion, however, we must observe that defense counsel has made only the minimal showing necessary to demonstrate diligence. Notably absent from the record is any inquiry from the District Court or the County Attorney regarding whether Dr. Kaplan was actually available to testify and what arrangements had been made by defense counsel to secure his presence at the trial on Friday.

¶16    Further, application of the *Fife* factors supports our conclusion that the interests of justice and Gleed's right to a fair trial necessitated the grant of his motion for continuance for a day and a half in order to allow Dr. Kaplan to testify. 187 Mont. at 69, 608 P.2d at 1071-72; *Fields*, ¶ 20. First, the only conclusion that can be drawn from the record is that there was "a reasonable expectation or prospect of obtaining" Dr. Kaplan's presence in this case if the trial had been continued from Wednesday afternoon on December 19 to Friday, December 21. Although it is unclear whether the possibility of videoconferencing was explored further, Dr. Kaplan's own statements in his report, along with defense counsel's repeated reference to Dr. Kaplan's forthcoming testimony, support the conclusion that there was a reasonable expectation that he would testify as

scheduled. While perhaps the District Court may have suspected that Dr. Kaplan was likely *not* available or otherwise unable to testify, the record does not bear out this suspicion. We must consider the request for continuance based upon the record before us, which presents no inquiry by the District Court or County Attorney regarding Dr. Kaplan's ability to testify, by videoconference or otherwise, on Friday.

¶17 Second, it is undisputed that Dr. Kaplan's testimony would have helped Gleed's case, as Dr. Kaplan emphatically supported Gleed's statement that the burns were accidental. The importance of Dr. Kaplan's testimony was even greater than that of the expert testimony in *Fields*, as Dr. Kaplan was the only defense expert testifying about the causation of the burns. Here, Dr. Kaplan's testimony was not merely cumulative or of questionable importance—to the contrary, it was critical in establishing Gleed's defense. Consequently, the jury was tasked to deliberate a case that presented expert testimony as to causation from the State without the opposing expert viewpoint that Dr. Kaplan would have provided.

¶18 Finally, the record indicates that Dr. Kaplan intended to testify, as he stated in his report. Thus, although the facts at hand present a close call, in considering the totality of the circumstances, including the significance of Dr. Kaplan's testimony to Gleed's defense, we hold that the District Court abused its discretion in refusing to grant Gleed a recess of the trial for a day and a half in order to present Dr. Kaplan's testimony. *See Fields*, ¶ 26; *Fife*, 187 Mont. at 71, 608 P.2d at 1072-73 (in holding that the district court abused its discretion in denying defendant's motion for continuance, we stated: "Defendant's effort was in good faith; the testimony was not cumulative; the testimony

11

was material; . . . the delay would have been minimal and no one would have been inconvenienced thereby; and, of course, the value, as stated above is a close question which should have been resolved in favor of defendant, assuring him a fair trial. Conversely, without the testimony a conviction resulted."); *Borchert*, 281 Mont. at 325-27, 934 P.2d at 173-75 (the district court abused its discretion in denying defendant's motion for continuance when defendant specified "several bases for his contention that the interests of justice required that his motion for continuance be granted").

¶19 In light of our reasoning in *Fields*, the State's reliance on *Toulouse* is easily distinguished. In *Toulouse*, a defendant requested a continuance in the middle of trial until the following morning, in order to permit his sister, who was ill due to cancer and chemotherapy, to testify on his behalf. *Toulouse*, ¶ 10. However, unlike in the instant case, Toulouse offered "no reasonable expectation or prospect" of obtaining his sister's testimony "the next day, the next week, or the next month." *Toulouse*, ¶ 17. More importantly, Toulouse failed to demonstrate how his sister's testimony would have aided his defense. As previously stated, it is undisputed that Dr. Kaplan's testimony would have aided Gleed's defense. As such, the holding in *Toulouse* does not extend to the facts presented by the instant case.

## CONCLUSION

¶20 We reverse Gleed's conviction, vacate the District Court's judgment, and remand this matter for a new trial in a manner consistent with this Opinion.

/S/ LAURIE McKINNON

12

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JIM RICE