FILED

03/02/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0665

DA 18-0665

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 53N

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

J.W.K,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                   In and For the County of Gallatin, Cause No. DC 17-120-CX
                   Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Chad Wright, Appellate Defender, Haley Connell Jackson, Assistant
           Appellate Defender, Helena, Montana

      For Appellee:

           Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant
           Attorney General, Helena, Montana

           Marty Lambert, Gallatin County Attorney, Bjorn E. Boyer, Deputy
           County Attorney, Bozeman, Montana

                       Submitted on Briefs:  January 27, 2021

                                Decided:  March 2, 2021

Filed:

                             _____
                                   Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 J.W.K. appeals an order from the Eighteenth Judicial District Court, Gallatin County, sentencing J.W.K. to ten years in prison with a five-year parole restriction. We affirm.[1]

¶3 In 2014, J.W.K. was convicted of misdemeanor disorderly conduct in Gallatin County Municipal Court, the Honorable Karl Seel presiding. J.W.K. was sentenced to pay a $100 fine, $85 in court costs, and $50 in prosecution fees. J.W.K. unsuccessfully appealed his misdemeanor conviction to the District Court and this Court.

¶4 J.W.K. has never accepted the validity of his conviction and sentence imposed by Judge Seel. Following remand from this Court after J.W.K.'s appeal, Judge Seel assumed jurisdiction over J.W.K. and set a hearing for March 20, 2017, for the purpose of ensuring the terms of J.W.K.'s sentence were carried out. Thereafter, J.W.K., on several occasions, threatened to exercise his Second Amendment rights, arrest Judge Seel, and shoot Judge Seel if law enforcement intervened. J.W.K. articulated to others that he would kick down Judge Seel's door, tase or shoot Judge Seel, and harm Judge Seel's

---

[1] This Court granted an unopposed motion by J.W.K. to amend the name in the caption to reflect only initials due to the mental health information contained within the file.

wife. Judge Seel found paperwork that J.W.K. had filed in his case threatening and intimidating. Law enforcement cautioned Judge Seel regarding his safety and that of his wife.

¶5 The night before the hearing, Judge Seel was at home with his wife when an envelope was slipped through the door. Judge Seel looked out the window and saw J.W.K. quickly walking away from his home. In the letter J.W.K. expressed that any penalties imposed by Judge Seel, including J.W.K.'s arrest, would be reciprocated by J.W.K., with or without the assistance of law enforcement. Judge Seel found the letter threatening and intimidating, and he and his wife feared for their safety.

¶6 As a result, J.W.K. was arrested and charged with Threats or Other Improper Influence in Official and Political Matters, in violation of § 45-7-102, MCA. J.W.K. was appointed two attorneys from the Office of the State Public Defender. Prior to the omnibus hearing, J.W.K. filed a pro se motion indicating he wanted to approve "all strategic decisions" and wanted to ensure that he was not waiving the right to direct his defense or present certain facts and defenses. The District Court held an omnibus hearing on July 6, 2017, setting scheduling deadlines, a final pretrial conference, and a jury trial. The jury trial was scheduled for November 6, 2017. Two months prior to the scheduled jury trial, attorney Steven Scott of the Major Crimes Unit for the Office of the State Public Defender filed an entry of appearance and requested a hearing on J.W.K.'s prior motion to proceed without representation. On October 20, 2017, the District Court held a hearing on J.W.K.'s motion for self-representation and, after concluding that J.W.K. knowingly and voluntarily repeatedly and unequivocally requested to represent

3

himself, granted J.W.K.'s motion to proceed without counsel. J.W.K. also filed a motion to continue his trial, although later indicating he was not waiving his speedy trial rights and that the District Court had erred by setting the jury trial too soon thereby necessitating his continuance request.

¶7 On January 9, 2018, J.W.K. filed a second request for continuance representing that he had no ability to obtain expert witness testimony in time for trial. As became apparent at the subsequent final pretrial conference, J.W.K. wanted to have witnesses present from Facebook and/or Apple to show that he had unsuccessfully tried to upload his letter to Judge Seel as a public document. He also expressed that a previous treating physician could testify that J.W.K. did not act purposefully or knowingly when J.W.K. committed the offense, although J.W.K. made clear he was not asserting an affirmative defense of mental disease or defect. The District Court concluded J.W.K.'s requests were "vague," legally unsupportable with argument or relevant inferences, and did not constitute a "necessity" for a continuance. The District Court concluded that J.W.K. had adequate time to prepare for a simple, one-count trial and denied J.W.K.'s request. J.W.K. also filed a request for standby counsel, which the District Court granted. At the time the District Court granted his request, and at the subsequent February 8, 2018, final pretrial conference, the District Court explained standby counsel would not represent him, but rather would be available to offer advice on procedural and evidentiary matters at his request. A jury trial was held on February 20 through 23, 2018.

4

¶8 After the State rested, J.W.K. requested that standby counsel continue with full representation. The court explained that it would be patently unfair to order standby counsel to represent him and that his prior representations to the court were unequivocal and clear that he wanted to proceed without counsel and that he understood the role of standby counsel. The court summarized its efforts in prior hearings to convince J.W.K. to accept counsel, but that J.W.K. nonetheless was unequivocal in his request and demonstrated he was competent to make such a decision and to navigate the proceedings. The District Court denied J.W.K.'s mid-trial request for counsel.

¶9 The jury found J.W.K. guilty and the District Court ordered a presentence investigation report. J.W.K. renewed his request for counsel to represent him at sentencing, which the District Court granted. J.W.K.'s counsel filed a notice raising an issue concerning J.W.K's mental disease or disorder and an unopposed motion for a mental health evaluation. However, J.W.K. later filed a pro se motion to proceed with sentencing and to "bypass" his mental health examination. Counsel followed up with the appropriate request, which the District Court granted. On September 21, 2018, the District Court sentenced J.W.K. to ten years in prison and designated him ineligible for parole for the first five years. J.W.K. appeals.

¶10 J.W.K. argues he had severe mental health issues and that nobody has protected his rights. J.W.K. maintains that the court's failure to consider his mental health issues rendered his waiver of counsel invalid, prevented J.W.K. from adequately defending against the charge, and allowed him to be sentenced without the benefit of relevant mental health information. We address each of J.W.K.'s arguments.

¶11 The validity of a defendant's waiver of the right to counsel is a mixed question of law and fact, and is reviewed de novo. *State v. Jones*, 2020 MT 7, ¶ 17, 398 Mont. 309, 459 P.3d 841. Where there is a question of whether a defendant has waived his right to counsel, this Court will not disturb the district court's findings "as long as substantial credible evidence exists to support that decision." *City of Missoula v. Fogarty*, 2013 MT 254, ¶ 10, 371 Mont. 513, 309 P.3d 10 (quoting *State v. Clary*, 2012 MT 26, ¶ 12, 364 Mont. 53, 270 P.3d 88). Whether a defendant's right of due process has been violated is a question of constitutional law over which this Court exercises plenary review. This Court reviews a trial court's ruling on a motion to continue for abuse of discretion. *State v. Gleed*, 2014 MT 151, ¶ 10, 375 Mont. 286, 326 P.3d 1095.

¶12 J.W.K. first alleges the District Court violated his constitutional right to counsel after J.W.K. notified the court that he had been diagnosed with a mental illness and the court nonetheless accepted the validity of his waiver, refused to reinstate counsel, and imposed a sentence without the benefit of an additional mental health evaluation. The Sixth Amendment to the United States Constitution and Art. II, section 24, of the Montana Constitution, guarantee a criminal defendant the right to counsel and the corollary right to conduct his or her own defense. *State v. Marquart*, 2020 MT 1, ¶ 28, 398 Mont. 233, 455 P.3d 460. Waiver of the right to counsel must be knowing, voluntary, intelligent, and unequivocal. *City of Missoula*, ¶ 12. Proceeding without counsel may result in the loss of many of the benefits associated with proceeding with counsel. Accordingly, the district court has a "fundamental obligation" to ensure that a defendant's waiver of counsel is voluntary, knowing, and intelligent. *State v. Hartsoe*,

6

2011 MT 188, ¶¶ 38-39, 361 Mont. 305, 258 P.3d 428 (citing *Faretta v. California*, 422 U.S. 806, 835 (1975)). In assessing whether a request to proceed pro se constitutes a voluntary, knowing, and intelligent waiver, the circumstances surrounding the request must be carefully examined, and every presumption indulge against waiver. *State v. Browning*, 2006 MT 190, ¶ 14, 333 Mont. 132, 142 P.3d 757.

¶13 J.W.K. argues the court should have rescinded its order granting his motion for self-representation because a mental health evaluation provided to the court showed J.W.K. had serious mental health issues which prevented him from waiving his constitutional right to counsel. This mental health evaluation, which concluded J.W.K. indeed suffered from significant mental health issues, also concluded J.W.K. was competent to stand trial. J.W.K. introduced his psychological evaluation to demonstrate that he could not have waived his right to counsel knowingly, voluntarily, and intelligently. However, the record demonstrates otherwise. The District Court thoroughly reviewed J.W.K.'s psychological evaluation and noted that it concluded J.W.K. was competent to stand trial. The District Court also informed J.W.K. of the potential consequences if J.W.K. persisted in proceeding without counsel, which J.W.K. stated he understood. J.W.K. was articulate and demonstrated an ability to control and navigate the proceedings. We conclude the District Court thoroughly and adequately advised J.W.K. of his constitutional right to counsel and that the court correctly held J.W.K. made a knowing, voluntary, and intelligent waiver of his right to counsel.

¶14 J.W.K. next asserts the District Court violated his due process right to a fair trial when it did not grant him a continuance to secure expert testimony regarding his mental

7

state and J.W.K.'s attempts to post his letter to Judge Seel on social media thus establishing it was a public document. Section 46-13-202(3), MCA, provides that "all motions for continuance are addressed to the discretion of the trial court and must be considered in the light of the diligence shown on the part of the movant." It further states, "this section must be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the prosecution to a speedy trial." Section 46-13-202(3), MCA.

¶15 Throughout the proceeding, J.W.K. asserted his right to a speedy trial and was clear that he was not requesting a continuance, but rather he was asking the District Court to correct its own error of setting trial too soon. In evaluating J.W.K.'s request, the District Court concluded J.W.K. failed to articulate any necessity for a continuance and determined that the relevance of the expert testimony did not justify a continuance. The District Court explained the State had the burden of proving J.W.K. acted with the appropriate mental state and that J.W.K. already had evidence he had attempted to upload the letter he wrote to Judge Seel onto Facebook. J.W.K. also alleged the District Court deprived him of the ability to present a mental health expert at trial. However, J.W.K. informed the District Court that he was not relying on the affirmative defense of mental disease or defect. Further, J.W.K. previously received a psychological evaluation and did not subpoena the psychologist who authored the evaluation.

¶16 Lastly, J.W.K. alleges the District Court erred by not considering another psychological evaluation before sentencing him to ten years in prison. However, although J.W.K.'s counsel filed a motion for a mental health evaluation pursuant to

8

§ 46-14-311, MCA, counsel, at J.W.K.'s request, filed a motion to proceed to sentencing without the mental health evaluation. J.W.K. asserts his counsel did not properly ensure that he made a voluntary waiver of his right to secure a mental health evaluation. The record does not, however, reveal the reasons why counsel withdrew the motion for an examination, other than it was at J.W.K.'s urging. Furthermore, J.W.K. had the opportunity to subpoena his past psychologist to testify about his prior psychological evaluation. We conclude, upon this record, the District Court did not err when it sentenced J.W.K. without another mental health evaluation. To the extent J.W.K. is claiming that he did not validly waive his right to a mental health evaluation because of counsel's ineffectiveness, such an issue is more appropriately raised in a postconviction proceeding.

¶17 We are not unmindful of the difficulties persons with mental health issues face in the criminal justice system. The District Court had the unenviable job of protecting J.W.K.'s rights and ensuring a fair trial, in the face of J.W.K.'s insistence on representing himself—which he has a right to do. While mentally ill, J.W.K. was found competent to stand trial and specifically denied that he was raising an affirmative defense of mental disease or defect. Based on the record before us, we can reach no other conclusion but that the District Court correctly addressed and dealt with the issues which came before it.

¶18 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶19   Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR